89 N.J. Super. 342 (1965)
215 A.2d 43
THEODORE J. KENSIL, PLAINTIFF-APPELLANT,
v.
CITY OF OCEAN CITY: MAYOR AND COMMISSIONERS OF THE CITY OF OCEAN CITY; HOWARD STAINTON; WILLIAM S. LUFF; MARY OEHLSCHLAGER; AND JOHN A. BURRELL, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 1, 1965.
Decided November 18, 1965.
*343 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. Alexander Feinberg argued the cause for appellant (Messrs. Evoy & Feinberg, attorneys).
Mr. Josiah E. DuBois, Jr. argued the cause for respondent City of Ocean City (Messrs. DuBois, Maiale & DuBois, attorneys).
Mr. William J. Hughes argued the cause for respondents Howard Stainton, Mary Oehlschlager and John A. Burrell (Mr. French B. Loveland, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
Plaintiff appeals from a summary judgment entered in defendants' favor in the Chancery Division.
*344 The central issue involved is whether a check, honored on presentment, but drawn and delivered at the time of the sale upon an account which at that time contained insufficient funds to cover its face amount, is a valid payment, as the Chancery Division held. In defense of plaintiff's appeal defendants contend that plaintiff was without standing to bring this action. We find it unnecessary to decide this question since we conclude that on the merits the granting of summary judgment in favor of defendants must be upheld.
A sale of public lands pursuant to N.J.S.A. 40:60-26 was conducted by defendant municipality on December 15, 1964 at or about 2 P.M., pursuant to a statutory notice published in various newspapers. One of the requirements so published was that the successful bidder pay 20% of the bid (together with advertising costs) at the time of the sale, the balance to be paid upon final settlement. The notice of sale also provided for a minimum bid of $100,000, and for the city to retain the 20% deposit of the successful bidder as liquidated damages in the event that such bidder should fail to make final payment in accordance with the terms of the notice.
The sequence of events pertaining to the sale follows: At about 1:30 P.M. on December 15, 1964 defendants Howard S. Stainton and William G. Luff went to Cape May County National Bank (Cape May bank) where an executive vice-president granted them a loan of $50,000. Since they did not then know how much money they would need in the event they became successful bidders, they did not open an account or draw upon the loaned funds.
Defendants Mary Oehlschlager and John A. Burrell appeared at the sale with Luff to bid as agents for Stainton and Luff. The bidding was begun by plaintiff, who had previously submitted by letter the minimum bid of $100,000 accompanied by a certified check for $20,000 as a deposit. As the bidding progressed plaintiff made his final bid of $146,000. (He admitted that at the time he did not want to go higher.) Defendants bid $150,000 and the property was struck off to *345 Burrell. Burrell then delivered to the city treasurer a check in the amount of $24,560.86 drawn on the account of Burrell Construction Co. in the Guarantee Bank and Trust Co. (Guarantee bank).
At about 3:15 P.M. the city treasurer took the check to Cape May bank to deposit it. In response to an inquiry by the city treasurer, the president of Cape May bank telephoned a bookkeeper at Guarantee bank and learned that the account of Burrell Construction Co. contained insufficient funds to cover the check. With knowledge of this situation the city treasurer deposited the check.
At about the same time Burrell apprised Stainton of the amount of his successful bid. Stainton and Luff then returned to Cape May bank where they spoke to the president shortly after the city treasurer had left. They opened an account and had a check in the amount of $35,000 certified and made payable to Burrell.
While Stainton and Luff were at the Cape May bank, Burrell telephoned Guarantee bank and told an officer that he wished to deposit a $35,000 certified check to cover the check he had just drawn to the order of the city. He was told that the bank was about to close for the day and that his deposit would be among those of the following day. The officer of Guarantee bank then telephoned the president of Cape May bank and told him that the check to the city would be honored when presented. Accordingly, Cape May bank sent the check through for collection that afternoon.
At 9:30 A.M. of the next day when Burrell deposited the $35,000 check at the Guarantee bank the bookkeeping department was authorized to honor his check to the city. When the president of Cape May bank was again informed that the check would be honored, he telephoned the city treasurer at about 12:30 P.M. and so informed him. The check was paid by Guarantee bank when it was presented on December 17, 1964.
Plaintiff took the position in the Chancery Division, as he does now, that because Burrell's account lacked sufficient *346 funds at the time of the sale to cover the face amount of the check, the delivery of that instrument was not payment of the deposit required by the notice of sale. Plaintiff sought as relief that the defendants' bid of $150,000 be declared void, and that his bid of $100,000 be reinstated as the only qualified bid.
N.J.S.A. 40:60-26 enables a municipal governing body to sell any lands or buildings not needed for public use in one of four ways, the first of which is by public sale to the highest bidder after public advertisement. The statute does not require a deposit, but permits sales to be made for cash or on credit. It also provides that the municipal governing body may impose any "conditions of sale in the manner and to the same extent as any other vendor of real estate * * * provided, however, that * * * the conditions of sale shall be set forth at length" in the advertisement of sale.
It is not argued that the requirement of deposit by a successful bidder was ultra vires. See P. Michelotti & Sons, Inc. v. Fair Lawn, 56 N.J. Super. 199, 202 (App. Div.), certification granted 31 N.J. 75 (1959), appeal dismissed 31 N.J. 556 (1960). See also Lieberman v. Neptune Twp., 50 N.J. Super. 192 (App. Div. 1958). Nor does plaintiff contend that the failure to require a deposit in cash or certified check was violative of the broad powers vested in the governing body by the statute. Rather, argues plaintiff, the giving of Burrell's check and the acceptance of it by the city in light of the insufficiency of the account upon which it was drawn constituted a material noncompliance with the requirement that 20% of the highest bid be paid at the time of the sale.
The parties cite no decisions dispositive of the issue and resort to the Uniform Commercial Code, N.J.S. 12A:3-101 et seq., to reveal the status of the check as payment of the required deposit. N.J.S. 12A:3-104(1) sets out the four attributes that a writing must have to be considered a negotiable instrument, and subsection 104 (2) (b) provides that a writing which complies with those requirements is "a `check' if it is a draft drawn on a bank and payable on demand." *347 N.J.S. 12A:3-108 states that: "Instruments payable on demand include those payable at sight or on presentation and those in which no time for payment is stated." (Emphasis added) The meaning of "payable * * * on presentation" becomes clear in light of the law that a check does not of itself operate as an assignment of any funds in the bank, N.J.S. 12A:3-409(1), but suspends the underlying obligation until the instrument is presented. N.J.S. 12A:3-802(1)(b); see also N.J.S. 12A:2-511(3). The drawer's contract is that he will pay the amount of an uncertified check upon dishonor and notice thereof, N.J.S. 12A:3-413(2). Even the maker or acceptor of a certified check engages that he will pay the instrument according to its tenor at the time of his engagement. N.J.S. 12A:3-413 (1).
These rules indisputably demonstrate that a check can be a negotiable instrument without constituting immediate payment. Under the code, and even at common law, see State v. United States Steel Corp., 12 N.J. 38, 45 (1953); Joyce v. Stafford, 72 N.J. Super. 596 (Cty. Ct. 1962), affirmed o.b. 78 N.J. Super. 256 (App. Div. 1963), a check is not payment until presented and paid, unless the parties agree otherwise. Since there was no such agreement here, the conclusion is inescapable that the check was not payment at the time of sale, but a promise of future payment at the time of presentation. The code rule that a check cannot be payment until it is honored at presentment supersedes the effect, if any, of the dictum in Hayes v. Federal Shipbuilding & Dry Dock Co., 5 N.J. Super. 212 (App. Div. 1949), that the question whether a check is payment is answered in part by looking at the funds in the drawee bank at the time of delivery.
Despite the conclusion that the deposit technically was not paid at the time of the sale, the record shows that payment was made when the check was duly presented. This fact reveals plaintiff's entire argument as an objection, at best, to a technical defect in defendants' compliance, which the city could waive since the check did not in any way affect *348 fair competitive bidding which is the fundamental objective of a bidding statute. It is well settled in this State that minor and inconsequential variations and technical omissions may be the subject of waiver. P. Michelotti & Sons, Inc. v. Fair Lawn, supra (irregularity of uncertified check held properly waived); cf. Hillside Twp. v. Sternin, 25 N.J. 317, 324 (1957) (material deviation in failure to submit check along with bid held not waivable). The rationale of this principle was articulated in the leading decision of Faist v. City of Hoboken, 72 N.J.L. 361 (Sup. Ct. 1905). Although Faist dealt with the award of a contract for municipal work, the following discussion of policy in that case can appropriately be applied to the highest bid at a sale of municipal land:
"Mere irregularity in a bid will not justify its rejection by a municipal body charged with a duty of awarding a contract to the lowest bidder. The form of the bid, not being embodied in the statute, is a regulation prescribed by the city; and failure to technically comply with the form required will not defeat the right of the lowest bidder, to have the contract, if, after the bids are opened, it appears there has been a substantial compliance with the requirements, and he tenders himself ready to execute the requisite contract and furnish responsible bondsmen or good security, as was the fact in this case. The statute is intended to secure to the city the contracting of the work to the lowest responsible bidder, and mere irregularities in the form of the bid, or details of statement, which do not in any way mislead or injure, are not sufficient to justify the rejection of such a bid. It is in the interest of the public that the lowest bid, though it be irregular, be accepted, and, if necessary, that the bidder have opportunity to correct an irregularity, while not changing the substance of the bid." (72 N.J.L., at p. 363)
Moreover, we are satisfied that defendant city soundly exercised its discretion in accepting defendants' bid. The plain fact is that the city obtained exactly what it sought, namely, the highest bid in open competitive bidding, payment of a required deposit upon presentation of a check therefor in the ordinary course of business, and full and final settlement within the time period specified in the notice of sale. In these circumstances we would ill serve the public interests which the bidding statutes unrelentingly seek to protect if we were *349 to strike down defendants' bid and reinstate the minimum bid of plaintiff as he requests, at the expense of depriving the taxpayers of Ocean City of $50,000.
Affirmed.