478 P.2d 339

In the Matter of the **ESTATE** of Hannah **KOHLHEPP**, Deceased,

v.

Hal **MASON**, Appellant.

No. 11965.

Supreme Court of Utah.

Dec. 10, 1970.

Sherma Hansen, Omer J. Call, Brigham City, for appellant.

Mann & Hadfield, Walter G. Mann, Brigham City, for respondent.

CALLISTER, Justice:

Hal J. Mason, a devisee under the will of Hannah Kohlhepp, testatrix, appeals from an order of the district court decreeing termination of said devisee's right to purchase a dry farm granted under the will for his failure to comply with a prior court order.

Hannah Kohlhepp died testate January 3, 1969. Her will was admitted to probate on January 28, 1969; her executor, as des-

ignated by will, was Mervin E. Holt. The will provided:

> Fourth: I have a dry farm in Plymouth, of 160 acres, that has a mortgage on it. It is now in the Soil Bank and is to remain there for two more years. I direct that the payments from the Soil Bank be used for retirement of that mortgage. At my death I grant unto Hal Mason the right to buy the farm for $10,000.00 if he so desires.

> Fifth: * * * When the farm is sold I give unto my son, Ellis Hess the proceeds therefrom.

On April 7, 1969, Hal Mason filed a notice of intent to purchase. On August 29, 1969, the executor, Holt, determined unilaterally that a reasonable time had expired and notified Mason that he had 25 days in which to deposit $10,000 with the court or it would be presumed that his intent to purchase had been withdrawn for lack of payment. On October 16, 1969, Ellis Hess petitioned the court for an order to show cause, which was granted, and the hearing was set for November 5, 1969. In his petition Hess prayed that the court terminate Mason's right to purchase the farm and

immediately distribute the estate to the parties entitled.[1]

A hearing was held on November 5, 1969. Mason appeared and testified as to his attempts to procure financing and the difficulties that he had encountered due to a "tight money market." He requested a one-week extension in which to procure the money. A representative of Financial Service Company testified that his company had guaranteed they would make a loan to Mr. Mason, but he couldn't estimate how long it would take to complete the transaction. At the conclusion of the hearing, the court ordered:

> * * * the said Hal J. Mason shall have until Friday, November 7, 1969, until the hour of 5 o'clock P.M. of said day in which to deposit with Mervin E. Holt, the executor of the estate * * * the sum of $10,000.00 as the purchase price of said dry farm * * *

The court further ordered that if the purchase price were deposited, the executor should execute an executor's deed to the purchaser. In the event the purchase price were not so deposited, the purchaser's right under the will should be terminated.

---

1. Although the matter is not in issue before this court, the position of Hess is perplexing. He is vigorously attempting to cause the failure of his specific legacy, Sec. 74-3-1, U.C.A.1953. Since there are other heirs and no residuary clause in the will, nor any other suggested disposition of the farm than the one specified, a sale to Mason with the proceeds to Hess, this asset must be distributed under the law of intestate succession. Sec. 74-4-5, U.C.A.1953. Hess alleged in his petition that he is entitled to receive the farm, if it were not sold; but there is no devise of the realty to him.

On November 25, 1969, the court issued an order to show cause to executor, Holt, to show why he should not be ordered to execute and deliver a deed to Hal J. Mason and to obtain possession of a check of Financial Service Company, Inc., for $10,-000, payable to Holt, as executor, and to present the same for payment and accept the funds therefrom for distribution in accordance with the will.

The order to show cause came on for hearing on December 2, 1969, at which time the following evidence was adduced: Financial Service Company on the day of the deadline deposited two checks to its account at the First Security Bank in Brigham City. One check was from an investor in Salt Lake City and was in the amount of $6,150; the other check was for $4,000 and was drawn on the company's account in a bank in Logan, Utah. Mr. Wright, a representative of the company, testified that he deposited the first check at two o'clock and the second at 4:30 P.M., at which time he attempted to get a certified check for $10,000. He was informed that the second check could be certified, but the earlier deposit could not be certified until business hours on Monday. He further testified that the bank had never notified him that it was unable to collect on these deposits.[2]

Shortly before the 5 o'clock deadline with the approval of the court and the executor, an uncertified check of Financial Service Company was deposited with the clerk of the court in Brigham City. The following Monday morning, the executor, whose office was located in Tremonton, Utah, sent his secretary to the clerk's office with a written request that the secretary be given the check on deposit so that it could be deposited in the trust account for the estate. The executor testified that he specifically instructed his secretary to pick up the check and bring it to him so that he might endorse it and present it to the bank. The executor kept the trust account in a bank in Tremonton, Utah. The executor further testified that, in fact, he has never had the check in his possession, endorsed, or attempted to negotiate it.

The secretary, while in Brigham City, was met by Mr. Mann, the attorney for heir, Hess. Together they went to the drawee bank in Brigham City, whereupon, they queried, if the check were presented for payment, could it be paid. The vice-president of the bank, Morris Glover, checked the drawer's account and responded "no" and put a notation on the check "Drawn against uncollected funds." Mr. Glover testified on cross-examination that, although the check wasn't endorsed, it was presented for payment; he stated that Mr.

---

2. The hearing was held shortly after the events transpired and the bank statement had not been delivered to Financial Service Company.

Mann wanted the money for the check, and if the bank couldn't pay it, to mark the check. Mr. Glover testified that he has never determined whether the drawer had made the deposits so claimed on Friday, but, if the checks were deposited, the checks hadn't been collected by the bank at the time he reviewed the drawer's account. He further testified that as far as he knew the executor, Holt, had never presented the check for deposit or payment.

The executor, Holt, testified that the secretary returned to Tremonton without the check, but with a photocopy thereof that revealed the notation made by Mr. Glover. The executor assumed that Mason had failed to comply with the court order and that it was unnecessary to take possession, endorse, and present the check for payment. Mr. Holt sent a letter, dated the 10th of November; copies were received by Financial Service on the 13th and Mr. Mason on the 15th of November, wherein he stated that the check was presented for cashing at 9:00 A.M., Monday morning and the bank refused because it was drawn against uncollected funds. The executor stated that this constituted noncompliance with the court order and that he intended to petition the court for an order of final distribution. He concluded the letter with a statement that Mason's intent to purchase had expired for lack of consideration.

Based on the foregoing testimony, the trial court ruled that Mason had not complied with the court order because the check was not acceptable to the bank upon which it was drawn. The court decreed that the right of Mason to purchase the dry farm had terminated and that he had no further interest in the estate.[3]

It is undisputed that a tender of payment by means of an uncertified check was ef-

3. Prior to the resolution of the issues of this case, there is one aspect which merits comment. The initial show cause order, which the court ruled subsequently was violated, was brought by heir, Hess, and not the executor. By the terms of the will, Hess was bequeathed a legacy, the proceeds from the sale of the farm. Sec. 74-3-14, U.C.A.1953, provides that legacies are due and deliverable at the expiration of one year after the testator's decease. Under the statute, the legacy to Hess was not due and deliverable until January 3, 1970; yet Hess filed his order to show cause October 17, 1969. On the other hand, Mason received a conditional devise of the realty, with no time of performance specified.

"If no time for performance is fixed, a reasonable time is implied. What is a reasonable time is a question to be determined by the circumstances of each case. * * * It has been held that a reasonable time does not extend beyond the period limited by statute at the time of the testator's death for payment of legacies. * * * " 5 Page on Wills, Bowe-Parker Revision, Sec. 44.11, p. 422.

Thus Mason's right to purchase the farm was terminated on the ground that he had not deposited the funds by November 7, 1969, which were the source of the specific legacy to Hess, payable in January, 1970.

fected by deposit with the clerk prior to the deadline.

It is true that a check for the amount due, presented within time, and when no exception is taken to the form of tender, is a valid and legal tender of the amount due, but only when there are adequate funds in the account of the drawer *to pay such check upon presentation in due course.*[4]

* * * It is well settled that a tender by check in lieu of cash is sufficient unless it is objected to on that ground. No objection was made to the check at the time it was delivered. Had it been, the defendants would have had an opportunity to substitute cash to obviate the objection. In the absence of such objection plaintiff cannot now complain of failure of consideration because it was a check instead of cash, *unless the check had been presented for payment and dishonored. This was not done.* From aught that appears; if she had *presented the check for payment* it would have been paid, and defendants now stand ready and willing to see that the check is paid so that their part of the bargain will be kept.[5] [Emphasis added.]

Sec. 70A-3-802(1), U.C.A.1953, provides:

Unless otherwise agreed where an instrument is taken for an underlying obligation

\* \* \* \* \* \*

(b) in any other case the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. * * *[6]

In the instant action, has the check ever been presented for payment? The check was drawn to the order of "Mervin E. Holt Executor for the estate of Hannah Kohlhepp."

*Presentment is a demand* for acceptance or *payment made upon* the maker, acceptor, *drawee* or other payor *by or on behalf of the holder.*[7]

"Holder" means a person who is in possession of a document of title or an instrument or an investment security drawn, issued or endorsed to him or his order or to bearer or in blank.[8]

Executor Holt testified that he has neither had possession of the check nor presented it for payment or deposit. He further stated that his instructions to his

4. Sieverts v. White, 2 Utah 2d 351, 354, 273 P.2d 974 (1954).
5. Ulibarri v. Christenson, 2 Utah 2d 367, 370, 275 P.2d 170 (1954).
6. See Balmoral Arms v. Rutkin, 104 N.J. Super. 354, 250 A.2d 50, 6 U.C.C.Repts. Serv. 165 (1969), wherein the court held that the receipt of a check suspends the obligation pro tanto until the presentment of the check under Sec. 3-802(1) (b) of the Uniform Commercial Code.
7. 70A-3-504(1), U.C.A.1953. [Emphasis added.]
8. 70A-1-201(20), U.C.A.1953.

secretary were to go pick up the check so that he might endorse it and present it for payment. There is no evidence in the record whereby he authorized his secretary or Mr. Mann to demand payment of the check on his behalf, and neither of the parties who went to the bank occupied the status of a holder under Sec 70A–1–201(20), U.C.A.1953.

A check does not itself operate as an assignment of any funds in the bank, 70A–3–409(1), but suspends the underlying obligation until the instrument is presented, 70A–3–802(1)(b) ; see also 70A–2–511(3). The drawer's contract is that he will pay the amount of an uncertified check upon dishonor and notice thereof, 70A–3–413(2). Under the foregoing provisions a check is not payment until presented and paid, unless the parties agree otherwise. Since the court and the executor did not agree otherwise, we must conclude that the check was not a payment at the time of deposit, but a promise of future payment at the time of presentation.[9] The trial court erred when it concluded that the check was not payment in accordance with its order because the payee had never presented the check and demanded payment.

This cause is reversed and remanded to the district court with an order to give dev-

isee, Mason, a reasonable time in which to pay the $10,000.[10] Costs are awarded to appellant.

CROCKETT, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

9. See Kensil v. City of Ocean City, 89 N.J.Super. 342, 215 A.2d 43, 3 U.C.C. Reptr.Serv. 60 (1965).

10. It would seem that two days is not a reasonable time.