148 N.J. Super. 481 (1977)
372 A.2d 1156
MARVEC ALLSTATE, INC., A CORPORATION, PLAINTIFF-RESPONDENT,
v.
GRAY & FEAR, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT, AND BRICK TOWNSHIP MUNICIPAL UTILITIES AUTHORITY, A MUNICIPAL BODY OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued February 23, 1977.
Decided March 17, 1977.
*483 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Stanley L. Geftic argued the cause for appellant Gray & Fear (Messrs. Rosenberg & Waldman, attorneys).
Mr. Richard M. Salsburg argued the cause for respondent Marvec Allstate, Inc. (Messrs. Salsburg and Kraemer, attorneys).
Mr. Charles E. Starkey argued the cause for defendant Brick Township Municipal Utilities Authority (Messrs. Starkey, White & Kelly, attorneys).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
Pursuant to appropriate public notice, defendant Brick Township Municipal Utilities Authority *484 (Authority) solicited bids on September 25, 1976 on public works contract S-13 for the construction of sewer lines. Plaintiff Marvec Allstate, Inc. (Marvec) and defendant Gray & Fear responded to the solicitation and submitted bids for the work. The notice to bidders required that a "bid bond" be posted in the amount of 5% of the total bid. The specifications required that each bid be accompanied by a certified check, cashier's check or bid bond, together with consent of surety attached, in an amount of 5% of the total bid price.[1] Since the project is to be funded partially by the Federal Government, the requirement established by the Federal Environmental Protection Agency for a 5% guarantee was applicable. See C.F.R. 35.935.
Inadvertently, the bid bond submitted by Gray & Fear was limited to a maximum of $20,000. Five percent of the total bid submitted by it ($2,459,265.95) would require a bid bond in excess of $122,000. Since the notice to bidders permitted the Authority to waive any insubstantial or minor defects, the Authority chose to waive the defect as to the amount of the Gray & Fear bid bond. In fact, within 24 hours of the opening of the bids Gray & Fear cured the defect and submitted a bid bond in an amount of 5% of its total bid. *485 We also note that the consent of surety accompanied the original bid bond in accordance with the specifications.
Plaintiff contends that the federal agencies involved recommended the amendment to N.J.S.A. 40A:11-21 so that they could be assured of ample security in the event of default of the ostensibly lowest bidder.[2] Furthermore, it claims, a deviation in excess of $102,000 cannot be deemed minor or inconsequential because the Authority and the federal funding agency are entitled to obtain a guarantee of the execution and full performance of the contract or the full security upon failure to execute the contract. It also argues that bonding capacity is not only determined by the general financial capabilities of the bidder, but also is based on experience in the trade, availability of equipment and other work in process. Consequently, it is a substantial cost which must be factored into any bid; and if one contractor is permitted to submit a lesser bid bond in the first instance and then cure it, the competitive advantage is apparent.
Plaintiff relies principally on Hillside Tp. v. Sternin, 25 N.J. 317 (1957):
The financial capacity of a bidder is a material and substantial consideration in connection with the award of contracts for public work. Manifestly it is one element which must enter into the determination of responsibility; the statute itself speaks of the lowest "responsible" bidder. * * * In this connection obviously the Legislature regarded that factor as important because it adopted a separate act to provide municipalities with a means of requiring a prospective *486 bidder to furnish in advance a statement of his financial ability. * * * And in our judgment a demand in a public advertisement for the deposit of some form of security as a guaranty that the contract will be entered into if the bid is accepted, is properly imposed as an aid to the governing body in reaching its decision. Moreover, the deposit is material for another reason. It is recognized that failure of the successful bidder to execute the contract results in its forfeiture * * * and the specifications so provided in this case. Thus, in most instances the municipality may be made whole for any resulting loss or expense by summary action without having to sue for damages. [25 N.J. at 323; citations omitted]
Plaintiff concludes that a gross variance in the bid bond submitted from that required "goes to the heart not only of the bidding procedure, but to the very essence of the requirement."
The trial judge accepted these arguments of plaintiff and concluded that the Authority did not have the security to which it was entitled and that the bidders were not treated alike because of the substantial discrepancy in the Gray & Fear bid bond. In reaching that conclusion, he stated that the conditions and specifications must apply equally to all prospective bidders, and that any discrepancy or irregularity should not deprive a municipality or authority of its assurance that the contract will be entered into, performed and guaranteed according to specific requirements.
Acceptance of both plaintiff's argument and the conclusions of the trial judge requires that we regard the variance in the amount of the bid bond as the crucial test. We do not believe, however, that the variance in the amount of the bond is at all indicative of Gray & Fear's bonding capacity. It should be apparent that the variance in amount was merely the result of the misapplication of the proper statutory formula  either 10% of the bid, not to exceed $20,000, or 5% of the total bid.
As we have mentioned, the notice to bidders issued by the Authority reserved the right to waive any insubstantial or minor defect. In determining the substantiality of a defect regard must be had for its attendant consequences. The *487 law is well settled that a public contracting unit may always waive minor or inconsequential conditions and immaterial variances in the form of the bid. Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 411 (1975); Kensil v. Ocean City, 89 N.J. Super. 342, 348 (App. Div. 1965). In Bryan Constr. Co. v. Montclair Bd. of Trustees, etc., 31 N.J. Super. 200 (App. Div. 1954), the notice to bidders issued by the trustees required a guarantee by way of certified check. The specifications themselves also referred to bid bonds and included a blank form of bid bond. Defendant contractor submitted the lowest bid accompanied by a bid bond. The board of trustees accepted the low bid with the bid bond, and subsequently this court held that in the circumstances existing, the submission in the bond in lieu of check constituted substantial, if not precise, compliance. We held that the submission of a bid bond as security did not in any way materially damage competitive bidding:
* * * a municipal body has a greater function in dealing with irregularities in such matters than merely exercising a ministerial and perfunctory role. It has inherent discretionary power, and what is more, a duty to secure, through competitive bidding, the lowest responsible offer, and to effectuate that accomplishment it may waive minor irregularities. * * *

* * * * * * * *
If it can be said any irregularity here existed, it is patent that competitive bidding was not in any wise affected. It prevented no one from bidding, and all those that did bid were on equal footing, having the same opportunities as defendant company to read and utilize the instructions. [at 206-207]
In P. Michelotti & Sons, Inc. v. Fair Lawn, 56 N.J. Super. 199 (App. Div. 1959), certif. granted, 31 N.J. 75 (1959), app. dism. 31 N.J. 556 (1960), we found the deposit of an uncertified check instead of a required certified check under circumstances where the bidder submitted a replacement certified check within 24 hours to be a material and waivable defect. Again, we found that the waiver by *488 the municipality "in no way affected fair and competitive bidding."
In Kensil v. Ocean City, 89 N.J. Super. 342 (App. Div. 1965), we held that defendants' check honored on presentment, which was drawn and delivered at the time of sale upon an account which at that time contained insufficient funds to cover its face amount, was a valid payment and that the giving and acceptance of the check constituted compliance with the requirement that 20% of the highest bid was to be paid at the time of the sale of public lands:
Despite the conclusion that the deposit technically was not paid at the time of the sale, the record shows that the payment was made when the check was duly presented. This fact reveals plaintiff's entire argument as an objection, at best, to a technical defect in defendants' compliance, which the city could waive since the check did not in any way affect fair competitive bidding which is the fundamental objective of a bidding statute. It is well settled in this State that minor and inconsequential variations and technical omissions may be the subject of waiver. * * * [at 347-348]
Similarly, in Hanover Tp. v. Inter. Fidelity Ins. Co., 122 N.J. Super. 544 (App. Div. 1973), we upheld municipal waiver of a defect in a bid bond whose stated amount was approximately $1800 less than a required 10% of the bid. We found that variation to be minimal and insubstantial and therefore waivable by the municipality.
The decisions just mentioned indicate strongly that mere irregularity in the structure of a bid will not ordinarily justify the rejection of such a bid by a municipal body which is charged with the duty of awarding a contract to the lowest responsible bidder. The form of the bid has not been established by statute and is ordinarily established by the municipal agency seeking bids. If the goal of awarding a public contract to the lowest responsible bidder is to be reached, failure of technical compliance with the form of the bid should not interfere with its attainment. Accordingly, if there is substantial compliance with the requirements established by the notice to bidders, and it appears that the lowest *489 responsible bidder is prepared to execute the proffered contract and furnish sufficient security for its performance, it is in the public interest that such bid, though perhaps irregular, be accepted, and, if necessary, that the bidder be given the opportunity to correct any irregularity that will not change the substance of the bid. See Faist v. Hoboken, 72 N.J.L. 361, 363 (Sup. Ct. 1905).
We think that Hillside Tp. v. Sternin, 25 N.J. 317 (1957), may readily be distinguished from the situation from which we are presented here. First, and most obviously, Sternin involved a situation where no security and no consent of surety were presented to the municipality in response to the request for bids. Under those circumstances the court found that it was improper for the municipality to hold Sternin to his bid in the face of its refusal to contract and thus require it to seek redress in the courts for the loss it might suffer because of the refusal.
Again, if it can be said that Hillside Tp. v. Sternin establishes that our public policy requires strict compliance with the bid bond requirement, under the facts presented here there was actual compliance with the statutory provision with respect to guarantees. N.J.S.A. 40A:11-21. The first bid bond provided here by Gray & Fear complied with the statutory amount established by our Legislature  $20,000. We do not regard the additional provision of the statute as representing any particular policy of the State. In our judgment, the provision of the statute with respect to federal requirements merely represents legislative permission to bidding authorities to require additional guarantee where federal funds are involved. We find nothing before us that would indicate that there is any federal policy involved. Indeed, as we noted in footnote 2, above, the federal regulations explicitly establish that the Federal Government is not to be regarded as a party to the specifications or any contract entered pursuant thereto. Finally, although Sternin indicates that there is a competitive advantage to be gained by a bidder who fails to comply with the security requirements, there is *490 nothing in the opinion to indicate how this is so. In any event, the court clearly indicates that any such defect would probably be correctable by the deficient bidder:
* * * However, the claim is that the condition may be waived by the municipality as between itself and the recalcitrant bidder. Both parties concede, at least by plain implication, that the award of the contract to Sternin could have been successfully attacked by a taxpayer or another bidder (at least before execution of the instrument and the posting of a proper performance bond). [at 324; emphasis supplied]
The cases dealing with this question plainly establish two criteria for determining whether an instance of noncompliance with the notice to bidders constitutes a substantial and therefore nonwaivable irregularity: First, whether the defect, if waived, would permit the bidder to withdraw his bid and thus deprive the municipality of its guarantee that the contract will be entered into and performed according to the specifications, and second, whether the defect is of such a nature, if waived, that it would place the recalcitrant bidder in a position of advantage over the other bidders by improperly affecting the established common standards of competition.
In order to apply properly these criteria to the circumstances before us, we should be guided by the underlying policy of the bidding statutes. That policy has most recently been restated by our Supreme Court in Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403 (1975):
Bidding statutes are for the benefit of the taxpayers and are construed as nearly as possible with sole reference to the public good. Their objects are to guard against favoritism, improvidence, extravagance and corruption; their aim is to secure for the public the benefits of unfettered competition. To achieve these purposes all bidding practices which are capable of being used to further corrupt ends or which are likely to affect adversely the bidding process are prohibited, and all awards made or contracts entered into where any such practice may have played a part, will be set aside. This is so even though it is evident that in fact there was no corruption or any actual adverse effect upon the bidding process. [at 409-410] *491 See also, 10 McQuillin, Municipal Corporations (1966 ed.), § 29.29 at 321-322. However, the provisions of the bidding statutes must be read in the light of the reason for their enactment so that they are not applied where they are not intended to operate and thus deny municipalities authority to deal with problems in a sensible, practical way. Whelan v. N.J. Power & Light Co., 45 N.J. 237, 252 (1965).
We disagree with the arguments advanced by plaintiff under the facts presented here, and conclude that the trial judge erroneously accepted them in reaching his determination that the discrepancy in the Gray & Fear bid bonds was nonwaivable for the following reasons: First, accepting the purpose of N.J.S.A. 40A:11-21 to be the assurance to a municipality that if the bidder is awarded the contract he will enter into the agreement and furnish a performance bond, there is no showing here whatever that defendant would not enter into the contract or furnish the performance bond. Indeed, within 24 hours of the opening of the bids, Gray & Fear cured the defect by submitting a bid bond of 5% of the total bid to the Authority. In addition, the consent of surety to the delivery of a performance bond, as was also required by the notice to bidders, was delivered by Gray & Fear with the original bid bond. Second, the clear intent of the Legislature in amending that statute was to insure that federal funds could be obtained for local purposes, and not to insure that federal agencies would be secure. Compare Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. at 413. Finally, the effect of the waiver by the Authority did not deprive it of assurance that Gray & Fear would enter into, perform and guarantee the contract according to specifications. If Gray & Fear did not have the requisite bonding capacity, it could not have immediately complied with the federal regulation within 24 hours. Moreover, the waiver did not adversely affect the competitive bidding by placing defendant in a position of advantage over plaintiff. Defendant readily complied with all the requirements, including a bid bond of 5% of the total bid, which is the maximum *492 required under the statute. We note parenthetically that the original bid bond equalled the maximum amount required for New Jersey bidders in contracts not involving federal funds. Unquestionably, the total amount submitted by each bidder remained unaffected by the Authority granting permission to Gray & Fear to cure the defect. Consequently, the competitive prospects of the bidding were not tainted.
We emphasize that the Authority does not merely have a ministerial and perfunctory role in dealing with irregularities in the submission of bids, but has an inherent discretionary power and duty to secure the lowest responsible offer through competitive bidding. Bryan Constr. Co. v. Montclair Bd. of Trustees, etc., above, 31 N.J. Super. at 206. In acting as it did here, the Authority exercised its discretion by waiving the defect and permitting defendant to cure it. As a result the taxpayer has been saved $119,692.91, the difference between the bid of Gray & Fear and plaintiff. Bidding statutes are for the benefit of the taxpayer and are to be construed as nearly as possible with sole reference to the public good. If the bidding practice under consideration is capable of being used to further corrupt ends or likely to affect adversely the bidding process, it should be rejected even if in fact there was no corruption or any actual adverse effect upon the bidding process. Hillside Tp. v. Sternin, above 25 N.J. at 326. However, under the factual pattern established here, we cannot conclude that defendant Gray & Fear's inadvertence possessed such capabilities.
The judgment of the Chancery Division is reversed and the cause remanded with directions that the bid of Gray & Fear be reinstated and that the contract in question be awarded to it by the Authority.
NOTES
[1] N.J.S.A. 40A:11-21:

There may be required from any person bidding on any contract or agreement, advertised in accordance with law, that the bid be accompanied by a guarantee payable to the contracting unit that if the contract or agreement is awarded to him he will enter into a contract therefor and will furnish any performance bond or other security required as a guarantee or indemnification. The guarantee shall be in the amount of 10% of the bid, but not in excess of $20,000.00, except as otherwise provided herein, and may be given, at the option of the bidder, by certified check, cashier's check or bid bond. In the event that any law or regulation of the United States imposes any condition upon the awarding of a monetary grant to any contracting unit, which condition requires the depositing of a guarantee in an amount other than 10% of the bid or in excess of $20,000.00 the provisions of this section shall not apply and the requirements of the law or regulation of the United States shall govern.
[2] This assertion may be doubted since under the regulations the Federal Government is not to be regarded as a party to any contract such as would result from this project and the bids submitted therefor:

Any contract or contracts awarded under this Invitation for Bids are expected to be funded in part by a grant from the United States Environmental Protection Agency. Neither the United States nor any of its departments, agencies or employees is or will be a party to this Invitation for Bids or any resulting contract; * * *. [C.F.R. § 35.938-4(c)(5)]