GEORGE W. KENNEDY CONSTRUCTION COMPANY, INC., Plaintiff-Appellant, v. THE CITY OF CHICAGO et al., Defendants-Appellees.

First District (4th Division)   No. 85—972

Opinion filed July 18, 1985.

LINN, J., dissenting.

Jann, Carroll, Sain & Dolin, Ltd., of Chicago (Gary A. Weintraub, of counsel), for appellant.

O'Brien, O'Rourke, Hogan & McNulty, of Chicago (John C. O'Rourke, Jr., of counsel), for appellees Reliable Contracting & Equipment Co. and Abbott Contractors, Inc.

James D. Montgomery, Corporation Counsel, City of Chicago (Phillip L. Bronstein and Maureen Kelly Ivory, of counsel) for appellee City of Chicago.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, George W. Kennedy Construction Company (hereinafter Kennedy), appeals from the trial court's order denying its motion for summary judgment and granting a motion for summary judgment to the defendants city of Chicago and William Spicer, the city's purchasing agent (hereinafter the city) and Reliable Contracting & Equipment Company and Abbott Contractors, Inc., a joint venture (hereinafter Reliable). In its ruling the trial court found that Kennedy's bid to construct a 48-inch water main project was unresponsive

in that it contained a material variance as a result of Kennedy's failure to properly execute a signature sheet within the bid proposal.

On December 21, 1984, the city formally advertised in the Chicago Tribune for construction bids on two separate water main projects, a 60-inch water main and a 48-inch water main. Both Kennedy and Reliable submitted bids on each of the two projects. On January 11, 1985, the city opened the sealed bids. Kennedy was thereafter notified by the city that it was the lowest responsible bidder on the 60-inch project and that it would be awarded that contract pursuant to section 8—10—3 of the Illinois Municipal code (Ill. Rev. Stat. 1983, ch. 24, par. 8—10—3), which provides that "all purchase orders or contracts *** involving amounts in excess of $10,000, made by or on behalf of any such municipality, shall be let by free and open competetive [sic] bidding after advertisement, to the lowest responsible bidder." The contract for the 60-inch project is not at issue in the instant appeal.

Kennedy was also the lowest responsible bidder on the 48-inch project. The bid package submitted by Kennedy for this project was comprised of multiple sections of documents, all of which were part of the uniform contract prepared and issued by the city. Various designated sections provided information regarding the advertisement for bids, the requirements and instructions to the bidders and the general conditions for the bid. There was also a section that listed the special conditions required for the project and a "Proposal and Acceptance" section that set forth the bidder's proposed terms for the project, the signature page for the bidder and the page to be utilized by the city were it to accept the bidder's offer. On its cover page, the bid package directed that *"BIDS TO BE EXECUTED IN TRIPLICATE."*

The most significant component of the bid package for purpose of this appeal was the "Proposal and Acceptance" section. This section states generally that "[t]he undersigned proposes to construct [a 48-inch water main] as required by this Contract, to perform everything required to be performed and to provide and furnish all the labor, materials, tools, equipment, expendable and otherwise, and all accessories and transportation services necessary to perform and complete, in a workmanlike manner, and within the specified time the work required, all in accordance with the Contract documents at the Contract unit prices." Following this opening portion of the proposal, there are additional provisions concerning time of completion, liquidated damages and specific prices for items. Next, there are a number of other pages setting forth specific contract terms, such as: minority business participation, uncompleted work and disclosure of ownership inter-

ests. The proposal concludes with three alternative signature pages; one if made by an individual, another if made by a partnership and the third, applicable to the instant case, is for a proposal made by a corporation. This third signature page, the corporate signature page, is entitled "To Be Executed By A Corporation." Finally, following the three "signature sheets" is a blank "Acceptance" page to be executed by the city.

Specifically, the corporate signature page has a line for the corporate name. The blank beneath it requests the president's signature and is preceded by the printed word, "By." A parenthetical clause beneath these blanks directs that "[i]n the event that this bid is executed by other than the President, attach hereto a certified copy of that section Corporate By-laws or other authorization by the Corporation which permits the person to execute the offer for the corporation." Next, is a line for attestation by the corporate secretary.

The various schedules and affidavits contained in the "Proposal and Acceptance" section set forth proposed contract terms and were all signed by people other than Kennedy's president. Specifically, there was an affidavit signed by Kennedy's secretary regarding Kennedy's uncompleted contracts and outstanding bids. There was also an affidavit signed by the vice-president of the Minority Business Enterprise (MBE) setting forth particular business data regarding that firm and a letter of intent, executed by the vice-president, indicating that firm's commitment to serve as subcontractor. In conjunction thereto was an affidavit executed by Kennedy's secretary attesting to the information provided by the MBE and acknowledging Kennedy's intent to serve as the MBE's general contractor. Kennedy's secretary also executed a disclosure of ownership interests form.

In a separate section of the bid package, the section listing the special conditions for the project, were two pages executed by Kennedy's secretary. One was the status report on the MBE's payments and the second an affidavit regarding Kennedy's commitment to hire Chicago residents as employees. Also included in the bid package was a "Bid or Proposal Bond" executed by Kennedy's secretary.

For the purpose of this appeal, the critical page is the corporate signature page in the "Proposal and Acceptance" section of the bid package. This is the contested portion of the contract, because, although it contains the corporate name and address and it was attested to by the corporate secretary, it was not in fact executed by the president or by anyone "other than the president" that attached a "certified copy of that section of the corporate by-laws or other authorization by the corporation which permits that person to execute

the offer for the corporation."

On January 16, 1985, five days after the bid opening, an employee for the city's purchasing department contacted Kennedy. Whereafter, George W. Kennedy, Kennedy's president, met with the city and signed the corporate signature page of Kennedy's "Proposal and Acceptance" section. On February 28, 1985, the city then informed Kennedy that its bid on the 48-inch project was not responsive because it was not properly signed at the time it was submitted and formally opened and therefore Kennedy would not be awarded the contract.

On March 11, 1985, Kennedy filed a complaint for declaratory relief, injunctive relief, *mandamus* and *certiorari*, a motion for temporary restraining order and a motion for preliminary and permanent injunction, ultimately seeking to be awarded the contract for the 48-inch project. The trial court entered a temporary restraining order on April 3, 1985, prohibiting the city from awarding the contract for the 48-inch project.

On April 8, 1985, following arguments on motions for summary judgment filed by all the parties, the trial court found that Kennedy's bid was not fully responsive. The judge stated that although the rejection of Kennedy's bid will "cost the taxpayers additional money, I cannot upset the bidding process that has been placed in effect. To permit this contract to be acknowledged with a signature five days later opens Pandora's box to all sorts of games."

Consequently, the trial court dissolved the previously entered temporary restraining order, denied Kennedy's motion for preliminary and permanent injunction, denied Kennedy's motion for summary judgment and granted the defendants' motions for summary judgment. The court also denied Kennedy's motion to stay the judgment pending appeal.

On April 10, 1985, Kennedy filed notice of appeal from the trial court's order of April 8, 1985. Contemporaneously, the city formally accepted Reliable's bid on the 48-inch project.

■■ The principle issue on appeal is whether the omission of Kennedy's president's signature on the corporate signature page creates a material variance rendering Kennedy's bid unresponsive. The relevant law regarding material variances is set forth in *Leo Michuda & Son Co. v. Metropolitan Sanitary District* (1981), 97 Ill. App. 3d 340, 344, 422 N.E.2d 1078, wherein the court explained:

> "Bids must conform to the advertised requirements of the invitation to bid. [Citations.] Although a 'minor' variance does not require rejection of the proposal [citation], a 'material' variance will require rejection of the proposal. [Citation.] A bid

which contains a material variance is an unresponsive bid and may not be corrected after the bids have been opened in order to make it responsive. [Citation.] The test of whether a variance is material is whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders. [Citations.]"

In *Michuda*, the apparent low bidder's goal disclosure form did not list subcontracts the bidder intended to award to minority and small businesses as was required by the advertisement for bids. The court found that this omission was a material variance which rendered the bid unresponsive. The court explained that if it allowed the low bidder to amend its bid after the bids were opened, such bidder would enjoy a substantial advantage over the other bidders by being able to negotiate with minority and small businesses with the knowledge that it had been awarded the contract.

■■ We believe that Kennedy enjoyed a substantial advantage over the other bidders, thus, satisfying the test for material variance as discussed in *Michuda*. It was incumbent upon all bidders to conform their bids to the requirements of the advertisements for bids, and the instant bid package prepared and issued by the city specifically required that all bids be executed. Kennedy clearly did not execute the corporate signature page. This page required either the president's signature or the signature of a party authorized "to execute the offer for the corporation." Kennedy's proposal provided neither of those two signatures. The signature line for the president was blank, and, although Kennedy's corporate secretary signed the corporate signature page, his signature was located on the attestation line. Furthermore, Kennedy failed to attach a certified copy of the corporate bylaws or other authorization by the corporation which permits the secretary to execute the offer for the corporation.

The signature on the corporate signature page is the operative signature to bind Kennedy to its bid because this is the page that concludes the "Proposal and Acceptance" section that provides the bidder's proposed contract terms and various other business commitments. This corporate signature page is required to be executed by the corporation and parenthetically it specifically declares that a proper signature will "execute the offer for the corporation." Therefore, as a result of its failure to properly execute this page, Kennedy was not bound to the terms of its bid and, if it were awarded the contract, Kennedy could disavow it at any time. This ability to disavow the contract would put Kennedy in a competitively advantageous position in relation to the other bidders. Consequently, Kennedy's proposal contained a material variance which rendered the bid unrespon-

sive and necessitated the city to disregard it.

■ Kennedy maintains that the fact that it signed its bid package in seven different locations and that it executed a bid bond is sufficient either to bind the corporation to its bid or as evidence that it intended to be bound by its bid. First of all, Kennedy's contention that the existence of seven separate signatures throughout the bid package and its execution of the bid bond bound Kennedy to its bid is without merit. The schedules and affidavits upon which the seven signatures are affixed relate solely to agreements subsidiary to the contract. These signatures do not represent any binding commitment to the city on the part of Kennedy. Furthermore, Kennedy's execution of the bid bond does not serve to bind Kennedy to its bid. The purpose of a bid bond is to insure that a certain amount of money, here, 5% of the bid, will be paid in the event the successful bidder fails to enter into a formal contract. Although the validity of Kennedy's bid bond is raised, even a properly executed bid bond would do no more than provide a form of liquidated damages. The bid bond was not a part of the contract, but rather was a condition precedent to the city's acceptance of Kennedy's offer. Therefore, a signature on the bid bond cannot cure the defect of an unexecuted bid. See *A.A.B. Electric, Inc. v. Stevenson Public School District No. 303* (1971), 5 Wash. App. 887, 491 P.2d 684.

However, Kennedy also argues that it has demonstrated an intent sufficient to bind itself to the contract. In support of its argument, Kennedy cites two cases that are both distinguishable. First, Kennedy states that a party named in the contract may become bound by its provisions even though he has not signed it. (*Welsh v. Jakstas* (1948), 401 Ill. 288, 82 N.E.2d 53.) In *Welsh*, a couple attempting to exercise a lease provision giving them the option to buy the leased real estate, had their attorney send a letter notifying the sellers of their intention regarding the option. Subsequently, the parties held meetings and began drafting a sales contract. After the emergence of complications, the sellers argued that the buyers had never formally accepted the option since they never signed any documents. The trial court granted the buyers' action for specific performance, and the Illinois Supreme Court affirmed that decree holding that the sellers' conduct by negotiating and drafting proposed sales contracts with the buyers demonstrated that the sellers regarded the buyers' acceptance, in the form of their attorney's letter, as sufficient.

*Welsh* was decided on a theory of either estoppel or waiver. As applied to this case, it would mean that Kennedy would have to assert that it did not have an advantage in the instant case because the city

could have enforced this contract against it by arguing that Kennedy was either estopped to deny the fact that it did not sign the contract or that the requirement of execution had been waived. Kennedy, understandably has not specifically advanced that theory, for to do so would mean that the city was required to bring a lawsuit in order to determine whether Kennedy was bound to its bid. Consequently, we do not believe that *Welsh*, which was decided on estoppel or waiver, is applicable to the factual setting here and therefore is not availing to Kennedy.

■ Kennedy next argues that it is not necessary that the signature of a party to a contract appear at the end. If its name is written in any part of the contract, or at the top or right or left hand, with the intention to sign or for the purpose of authenticating the instrument, it is sufficient to bind him unless subscription is required by law. In the absence of any statutory requirement to the contrary, the contract may be signed in any manner which will indicate an intention to be bound thereby. Kennedy advances these propositions based on the case of *First National Bank v. Husted* (1965), 57 Ill. App. 2d 227, 205 N.E.2d 780.

In *First National*, the sellers obtained a confession of judgment against the buyers. The confession clause was on the reverse side of the contract under the heading "Covenants and Conditions." The buyers signed on the face of the contract but did not sign the reverse side. The face of the contract recited "Buyer and Seller agree that the 'Covenants and Conditions' printed on the reverse side hereof are incorporated herein by reference and constitute part of this contract." It also contained the provision, "in the absence of any statutory requirement to the contrary, the contract may be signed in any manner which will indicate an intention to be bound thereby." The court held that the buyer sufficiently executed the contract in light of the two provisions contained on the face of the contract.

There are no comparable provisions in the city contract. Rather, there is an explicit requirement that the corporation sign in a particular place and more particularly, that if in fact the president of the corporation does not sign, the person who does sign must provide corporate bylaws or other corporate authorization establishing that that person has the authority to execute the offer for the corporation. Furthermore, unlike *First National*, where the buyer signed the contract, in the instant case, Kennedy never provided the necessary signature nor any accompanying corporate documents authorizing anyone else to execute the offer for the corporation. These facts render the instant case significantly distinguishable from *First National*. Accord-

ingly, absent compliance with the city's contractual requirements, Kennedy's intentions are simply immaterial and the fact remains that Kennedy is not bound to its bid and consequently, Kennedy has a substantial advantage over the other bidders.

■ Kennedy also argues that the instant variance was not material by comparing the variance in the instant action to the variance found in *Stanley Magic-Door, Inc. v. City of Chicago* (1982), 104 Ill. App. 3d 380, 432 N.E.2d 1016. In *Stanley Magic-Door*, a bidder failed to include in its bid a record of its past work experience. The bidder then attempted to submit the missing information after the bids were open. The court permitted the amendment and found that this variance was merely an informality that did not create an unfair advantage because there was no way the bidder could alter its prior work experience. The court did not find that the variance served not to bind *Stanley Magic-Door* to its bid.

In the case at bar, Kennedy's failure to execute its proposal cannot be considered similar to the variance in *Stanley Magic-Door*. The instant variance does not present the failure to include past information that is impossible to change, but rather involves an omission that leaves Kennedy unbound to its bid and thus in a position to perform or disavow the contract at its whim. Even with Kennedy's bid bond, Kennedy still enjoyed a substantial advantage over the other bidders. Assuming Kennedy was awarded the contract on the 48-inch project, regardless of the amount Kennedy would lose on the bid bond in the event Kennedy withdrew from that contract, Kennedy would still not be liable on the contract, and the city could only recover against Kennedy if it would bring a successful action on a waiver or estoppel theory. Further, under certain circumstances it may prove financially prudent for Kennedy to disavow the contract and sustain only the loss on the bid bond. To have such an option clearly gives Kennedy a substantial advantage over the other bidders. (Contra, *Menefee v. County of Fresno* (1985), 163 Cal. App. 3d 1175, 210 Cal. Rptr. 99.) Therefore, the city was correct not to classify Kennedy's variance as an informality, but rather as a material variance that renders Kennedy's bid unresponsive.

■ Lastly, it is important to note that Kennedy's belated attempt to cure the defect in its bid by signing the corporate signature page five days after the bids were opened was of no effect. Because Kennedy's failure to execute its bid was a material variance, it could not be cured after the bids were opened. At the time of the bid opening, Kennedy enjoyed a substantial advantage. *City of Chicago v. Mohr* (1905), 216 Ill. 320, 74 N.E.2d 1056; *Leo Michuda & Son Co. v. Met-*

*ropolitan Sanitary District* (1981), 97 Ill. App. 3d 340, 422 N.E.2d 1078.

Based on the foregoing, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON, J., concurs.

JUSTICE LINN, dissenting:

I respectfully dissent from the majority decision.

The instant appeal is from the trial court's order granting defendant's motion for summary judgment. The purpose of summary judgment is not to try an issue of material fact, but rather to determine if a triable issue of material fact exists. (*Nichelson v. Curtis* (1983), 117 Ill. App. 3d 100, 452 N.E.2d 883.) My honorable colleagues have here, in the majority opinion, improperly tried an issue of material fact, namely, whether under the test set forth in *Leo Michuda & Son Co. v. Metropolitan Sanitary District* (1981), 97 Ill. App. 3d 340, 422 N.E.2d 1078, Kennedy's inadvertent failure to sign page P-36 of the bid package constitutes a minor variance that does not require rejection of the bid, or a material variance that requires rejection.

This ultimate issue of fact is, in turn, pyramided upon numerous other issues of fact, including the issue of whether Kennedy, by his failure to initially sign page P-36 of the bid package, received a substantial advantage or benefit not enjoyed by the other bidders. (*Leo Michuda & Son Co. v. Metropolitan Sanitary District* (1981), 97 Ill. App. 3d 340, 422 N.E.2d 1078.) The majority has similarly tried this material issue, finding that Kennedy's failure to sign P-36 resulted in his not being bound to the terms of the bid and that if the contract were awarded to Kennedy, he could have disavowed it at any time. I find, however, that whether Kennedy could have disavowed the contract, in light of the fact that it was signed in seven places other than page P-36, ultimately signed by Kennedy on page P-36 at the invitation of the city, and accompanied by a bid bond is yet another issue of material fact inappropriately decided by the majority.

Moreover, I feel that the conduct of the city purchasing department, in inviting Kennedy to sign his bid offer, raises the material issue of waiver by the city. As an issue formed by the record, the issue of waiver was before the trial court even if it was not formally raised in the pleadings. *Peoria Harbor Marina v. McGlasson* (1982), 105 Ill. App. 3d 723, 434 N.E.2d 786.

It is undisputed that shortly following the bid opening, Kennedy was contacted by the city purchasing department and requested to attend a meeting. Present at the meeting, held five days after the bids were opened, were three members of the purchasing department, who invited Kennedy to sign page P-36. Waiver occurs whenever a party intentionally relinquishes a known right, either expressly or by conduct inconsistent with an intent to enforce that right. (*Harris v. Faultfinders, Inc.* (1981), 103 Ill. App. 3d 785, 431 N.E.2d 1205.) Waiver is often demonstrated by conduct indicating that strict compliance with provisions of a contract wil not be required. (*Leapera v. Karner* (1979), 79 Ill. App. 3d 221, 398 N.E.2d 224.) Despite the conduct of the city inviting Kennedy, whose bid was over $200,000 less than Reliable's, the next lowest bidder, to sign page P-36, the majority has necessarily concluded as a matter of law that waiver is not a material issue in the instant case.

*Michuda* dictates that a material variance may not be "corrected" after the bids have been opened. (*Leo Michuda & Son Co. v. Metropolitan Sanitary District* (1981), 97 Ill. App. 3d 340, 344, 422 N.E.2d 1078.) The concept of "corrected" by the bidder is not, in my mind, synonymous with the concept of waiver by the offeree. Thus, even if the material issue as to whether the lack of a signature on page P-36 was a material variance were to be decided in the affirmative, there would then remain the further factual issue of whether the city, by the conduct of its purchasing department, could have and did waive compliance with the requirement of a signature on page P-36 by virtue of the invitation it extended to plaintiff.

Based on these numerous issues of material fact presented by the instant case, I find that summary judgment was improperly granted, and for this reason, I respectfully dissent.