BODINE ELECTRIC OF CHAMPAIGN, Plaintiff-Appellant, v. THE CITY OF CHAMPAIGN *et al.*, Defendants-Appellees.

Fourth District    No. 4—98—0887

Argued March 24, 1999.—Opinion filed May 27, 1999.

T.G. Bolen, Michael J. Kehart, James E. Peckert, and A. James Shafter (argued), all of Kehart, Shafter & Webber, P.C., of Decatur, for appellant.

Frederick C. Stavins and Shaun K. Stuart (argued), of Champaign, for appellee City of Champaign.

David C. Thies (argued) and Lara L. Quivey, both of Webber & Thies, P.C., of Urbana, for appellee Potter Electric Services, Inc.

JUSTICE MYERSCOUGH delivered the opinion of the court:

Plaintiff, Bodine Electric of Champaign (Bodine), brought an action for declaratory judgment against the City of Champaign (City) to determine whether the submission of a 5% bid bond, rather than the required 10%, was a material variance that the City could not waive or an immaterial variance that the City had the discretion to waive. The trial court found for defendant City and denied the declaratory judgment, holding that plaintiff's bid bond of 5% was a material variance that could not be waived by the City. The trial court also dismissed plaintiff's remaining count for injunctive relief against the City and the next lowest bidder, defendant, Potter Electric Services, Inc. (Potter Electric), as well as plaintiff's breach of contract complaint for money damages against the City, holding that the counts were rendered moot by its declaratory judgment ruling. Plaintiff appeals the trial court's denial of declaratory relief and the dismissal of its counts for injunctive relief and money damages. We affirm.

## I. BACKGROUND

The City is a home rule municipality located in Illinois. In August 1998, the City issued a request for bids, with bidding instructions, for the Champaign police facility expansion project. Bid item No. 15 included the installation of electrical and security systems, with an estimated budget range of $1,250,000 to $1,500,000.

A 10% bid bond was a condition under both the project's bid packet instructions and city ordinance. The bid packet stated that the bid bond would serve as a security deposit that would be forfeited as liquidated damages if the bidder refused to enter into a contract after its bid is selected.

The request for bids also included the following language:

"The Owner [City] reserves the right to reject any and all Bids and waive any informalities in the Bidding. The Owner [City] is not obligated to accept the lowest or any other bid, and may waive an informality in any proposal and award work in any manner in which it determines the interest of the City will be served. The City will use the criteria listed in Section 12.5.37 of the Champaign Municipal Code, 1985, as amended, and any other criteria which may be included in the Contract Documents to select the lowest, responsible bidder." (Brackets in original.)

Although the City reserved this right to reject any and all bids or waive informalities, the record does not reflect, nor do the parties assert, that the City has exercised that right.

When the City opened the bids, it discovered that the plaintiff, Bodine, had submitted the lowest bid on item 15 in the amount of $998,000. However, Bodine submitted only a 5% ($49,900) bid bond,

rather than the required 10% ($98,800). Therefore, even though Bodine's bid on item 15 was $245,000 less than the lowest figure for the City's budgeted range, and $78,000 less than the next lowest bidder, it was not in compliance with the bid packet instructions and the city ordinance. The next lowest bidder was Potter Electric, which bid $1,083,000, and included the required 10% bid bond.

On September 23, 1998, five days after the bids were opened, Bodine tendered a 10% bid bond. On that same date, the City's police expansion team met to discuss whether to accept or reject bid bonds submitted with less than the required 10%. The meeting minutes specifically alleged potential adverse ramifications of accepting insufficient bid bonds, including:

"1. Future bidders would not have any reason to submit the required 10% bid bond if a lower amount or 5% was accepted.

2. Contractors could take more risks with their bids, meaning they could submit lower bids, with littler [sic] or no bid bond. They [contractors [(brackets in original)]] could determine if they are the low bidder and then provide the bond. The contractor[,] if after submitting a bid that is too low, could then withdraw from the bid process with a smaller, little or not [sic] penalty. The City would not want to set such precedence [sic], where less than the required 10% bid bonds were to be submitted.

3. Future bids and bond requirements would be suspect in that any amount could be submitted. It would become difficult to require a 10% bid bond."

The meeting minutes also suggest that the City's attorney would notify Bodine's attorney that Bodine had until September 25, 1998, to find case law demonstrating that the 5% bid bond could be waived by the City as a minor irregularity.

On October 2, 1998, the City concluded that the submission of a bid bond in less than the amount required was a material variance that would make a bid unresponsive. Shortly thereafter, the City held a pre-award meeting with Potter Electric. On October 16, 1998, Bodine filed a three-count complaint against the City and Potter Electric. Bodine sought injunctive relief against the City and Potter Electric in count I, money damages against the City in count II for breach of contract, and declaratory relief against the City in count III.

A hearing on Bodine's request for a declaratory judgment was scheduled for October 27, 1998. Bodine and the City submitted a stipulation and affidavits as to certain facts to the trial court.

On October 23, 1998, Potter Electric filed a motion for leave to be heard at the hearing on Bodine's request for declaratory relief and a motion to dismiss Bodine's complaint pursuant to section 2—619 of

the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 1996)).

On October 27, 1998, the trial court began the hearing on the declaratory judgment by hearing arguments on Potter's motion for leave to be heard and for leave to file a section 2—619 motion to dismiss. Over Bodine's objection, the trial court allowed both of Potter Electric's motions.

After hearing arguments for declaratory relief, the court ruled against Bodine. The court specifically cited the adverse ramifications listed in the meeting minutes favorably, asserting that it demonstrates that "it is irrefuted [*sic*] that the variance here[,] if granted[,] would give a bidder a substantial advantage over other bidders." Then, based on its ruling in favor of the City on the declaratory judgment, the trial court found counts I and II for injunctive relief and money damages moot and dismissed the counts with prejudice.

## II. ANALYSIS

### A. Standard of Review in Declaratory Judgment Actions

■ The grant or denial of declaratory relief is discretionary, as reflected in the language of section 2—701 of the Code, stating that the court "*may*, in cases of actual controversy, make binding declarations of rights" in certain matters, including "the construction of *** a municipal ordinance." (Emphasis added.) 735 ILCS 5/2—701 (West 1996); see also *Howlett v. Scott*, 69 Ill. 2d 135, 142-43, 370 N.E.2d 1036, 1039 (1977). The trial court's exercise of discretion in these cases is not given the same deference as in other contexts. *R.L. Polk & Co. v. Ryan*, 296 Ill. App. 3d 132, 142, 694 N.E.2d 1027, 1034 (1998), quoting *State Farm Mutual Automobile Insurance Co. v. Dreher*, 190 Ill. App. 3d 182, 185, 547 N.E.2d 1, 3 (1989).

As explained in *Chicago & Eastern Illinois R.R. Co. v. Reserve Insurance Co.*, 99 Ill. App. 3d 433, 436-37, 425 N.E.2d 429, 432 (1981):

> "Independent review is justified because the exercise of the trial court's discretion in granting or denying declaratory relief is not dependent upon factors which are difficult for an appellate tribunal to review, such as, for example, factual determinations of credibility."

■ Abuse of discretion means clearly against logic—the question is not whether the appellate court agrees with the circuit court, but whether the circuit court acted arbitrarily, without employing conscientious judgment, or whether, in view of all of the circumstances, the court exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted. *Smith v. Intergovernmental Solid Waste Disposal Ass'n*, 239 Ill. App. 3d 123, 136, 605 N.E.2d 654, 662 (1992).

■ The standard of review for declaratory judgments, therefore, is less deferential than abuse of discretion, but more deferential than *de novo* review. As stated by the supreme court in *First National Bank v. County of Lake*, 7 Ill. 2d 213, 224, 130 N.E.2d 267, 274 (1955), the issue is "whether the decision of the trial court [in denying or granting declaratory relief] was proper."

## B. Bid Variance: Did it Provide Bidder a Substantial Competitive Advantage?

■ The parties agree that the test for determining whether a variance is "material," thereby requiring rejection of the proposal, is whether it gives a bidder a substantial advantage or benefit not enjoyed by other bidders. *Leo Michuda & Son Co. v. Metropolitan Sanitary District of Greater Chicago*, 97 Ill. App. 3d 340, 344, 422 N.E.2d 1078, 1082 (1981). In *Michuda*, the appellate court upheld an injunction initiated by the second-lowest bidder on a public works project because the lowest bidder failed to list minority subcontractors as required in the bidding documents. *Michuda*, 97 Ill. App. 3d at 345, 422 N.E.2d at 1082-83.

The court found that the submission of the minority subcontractors' disclosure form approximately one month after the bids were opened gave the lowest bidder a substantial advantage over other bidders because its negotiating power with minority firms would be enhanced once it was known that the firm was the lowest bidder. *Michuda*, 97 Ill. App. 3d at 345, 422 N.E.2d at 1082-83. The court held that although a minor variance does not require rejection of a proposal, a bid that contains a material variance is an unresponsive bid and may not be corrected after the bids have been opened in order to make it responsive. *Michuda*, 97 Ill. App. 3d at 344, 422 N.E.2d at 1082.

In *Williams Brothers Construction, Inc. v. Public Building Comm'n*, 243 Ill. App. 3d 949, 612 N.E.2d 890 (1993), the second-lowest bidder for a public construction project sought a preliminary injunction to enjoin the award of the project to the lowest bidder, arguing that the lowest bidder's bid was not responsive because it failed to list its proposed subcontractors on the bid form. The court affirmed the trial court's refusal to grant a preliminary injunction, holding that, notwithstanding other jurisdictions' case law on the matter, the failure to submit a list of subcontractors did not appear to provide the lowest bidder with an unfair cost advantage. *Williams Brothers Construction*, 243 Ill. App. 3d at 960-61, 612 N.E.2d at 897-98. In addition, the court found it significant that the plaintiff failed to submit the disputed bid requirement into evidence and that the bid require-

ment at issue was not required by law. *Williams Brothers Construction*, 243 Ill. App. 3d at 958, 612 N.E.2d at 896. The trial court here, however, found that (1) the variance created a substantial competitive advantage, (2) the bid requirement was submitted into evidence, and (3) the bid requirement at issue was required by city ordinance.

In *George W. Kennedy Construction Co. v. City of Chicago*, 135 Ill. App. 3d 306, 481 N.E.2d 913 (1985), *vacated on other grounds*, 112 Ill. 2d 70, 491 N.E.2d 1160 (1986), the appellate court affirmed the trial court's summary judgment order, holding that the omission of the president's signature on the corporate signature page of the corporation's bid created a material variance, thereby rendering its bid unresponsive, notwithstanding the fact that the corporation signed its bid package in seven different locations and that it executed a bid bond. Even though the corporation cured its variance five days after the bids were opened by having the corporate president sign the bid, the court reasoned that the failure to properly execute the signature page prior to the bids being opened left the corporation unbound to the terms of its bid and that to have such an option would clearly give the corporation a substantial advantage over other bidders. *George W. Kennedy Construction Co.*, 135 Ill. App. 3d at 314, 481 N.E.2d at 918. In the current dispute, Bodine remained bound by its bid, but not bound to the same extent as the other bidders. The insufficient bid bond arguably gave Bodine an advantage over other bidders because it would lose significantly less money through liquidated damages if it chose not to honor its bid.

Bodine relies on *Marvec Allstate, Inc. v. Gray & Fear, Inc.*, 148 N.J. Super. 481, 372 A.2d 1156 (1977). In *Marvec*, a New Jersey appellate court overturned a trial court and held that a $102,000 discrepancy between the bid bond submitted and the bid bond required was waivable where the low bidder cured the defect within 24 hours and where the original bond was the maximum amount generally required under New Jersey law and excess was required only for the purpose of obtaining federal funds. *Marvec Allstate, Inc.*, 148 N.J. Super. at 491, 372 A.2d at 1161.

Using New Jersey's two-part test for determining whether an instance of noncompliance with bid requirements constitutes a substantial and nonwaivable irregularity, the court determined that (1) the plaintiff failed to show that, if the defect in the bid was waived, the defendant would not enter the contract and furnish a performance bond, especially in light of the fact that the defendant cured its deficient bid bond and submitted a performance bond within 24 hours of the bond being opened; and (2) the waiver did not adversely affect the competitive bidding by placing defendant in a position of advantage

because the defendant readily complied with all requirements of the bid and because the total amount submitted by each bidder remained unaffected by the public entity's decision to permit defendant to cure the defect in its bid. *Marvec Allstate, Inc.*, 148 N.J. Super. at 491-92, 372 A.2d at 1161.

The *Marvec* court, however, characterized the variance in defendant's bid bond as "merely the result of the misapplication of the proper statutory formula—either 10% of the bid, not to exceed $20,000, or 5% of the total bid." *Marvec Allstate, Inc.*, 148 N.J. Super. at 486, 372 A.2d at 1158. Notably, the *Marvec* court placed particular emphasis on the fact that "the clear intent of the [l]egislature in amending that [bidding] statute was to insure that federal funds could be obtained for local purposes, and not to insure that federal agencies would be secure." *Marvec Allstate, Inc.*, 148 N.J. Super. at 491, 372 A.2d at 1161.

Therefore, while Bodine is correct in maintaining that the present dispute is similar to *Marvec* because Bodine cured the insufficient bid bond in a timely manner, and that the insufficient bid bond did not in any way alter Bodine's base bid, Bodine ignores the fact that the original bid bond submitted by the defendant in *Marvec* equalled the maximum amount normally required for New Jersey bidders and that the additional bid bond amount was not for the purpose of securing a contract, as is the case in the present dispute, but was required solely to secure federal funding. *Marvec Allstate, Inc.*, 148 N.J. Super. at 491-92, 372 A.2d at 1161.

Additionally, the *Marvec* decision is not without criticism. In *Cubic Western Data, Inc. v. New Jersey Turnpike Authority*, 468 F. Supp. 59, 65 (D.N.J. 1978), a case decided approximately one year later, a federal district court asserted that it had "serious reservations about the *Marvec* court's interpretation *** and remain[ed] unconvinced that the New Jersey Supreme Court was in fact stating that a total failure to comply with the security requirements can be corrected after the bids have been opened." The district court explained that although a substantial difference exists between the presentment of security, albeit in a deficient amount, and no security at all, the municipality in *Marvec* was only entitled to $20,000 anyway and, therefore, had no recourse for the full amount of the bid bond that was actually required. *Cubic Western Data, Inc.*, 468 F. Supp. at 65-66.

The defendants in the present dispute rely upon *L. Pucillo & Sons, Inc. v. Township of Belleville*, 249 N.J. Super. 536, 547, 592 A.2d 1218, 1225 (1991), to undercut *Marvec*. In *Pucillo*, the plaintiff sought a declaratory judgment and an injunction against a township and a contractor, asserting that it was a potential bidder that was deterred

from submitting a competitive bid by specifications that were later waived. *L. Pucillo & Sons, Inc.*, 249 N.J. Super. at 542, 592 A.2d at 1222. Although the appellate court found that the failure to meet the bond requirements set forth in the bid specifications was a material defect that the public body could not waive, the untimely filing of the action prevented the court from setting aside the contract, as "long-standing judicial policy would ordinarily require." *L. Pucillo & Sons, Inc.*, 249 N.J. Super. at 548, 592 A.2d at 1225-26. The court, therefore, finding it to be in the public's best interest, compelled the selected bidder to fully comply with the bid specifications by posting bond in accordance with the original bid specifications. *L. Pucillo & Sons, Inc.*, 249 N.J. Super. at 551, 592 A.2d at 1227.

■ Here, the trial court, citing the police team meeting minutes, logically concluded that Bodine received a substantial competitive advantage because Bodine stood to lose significantly less money if it decided not to contract with the City. Just because Bodine did not actually realize these advantages by breaching its offer does not mean that Bodine could not exercise these advantages if it desired.

## C. Public Body Discretion

■ Under Illinois law, the trial court was required to accord deference to the determination by the City that a 5% bid bond is material. The City is a home rule unit and, as such, may exercise any power and perform any function pertaining to its government and affairs. Ill. Const. 1970, art. VII, § 6(a). Its powers and functions shall be construed liberally. Ill. Const. 1970, art. VII, § 6(m).

The City exercised these powers long before the current dispute and mandated by ordinance the use of a competitive-bidding process for purchases over $15,000, requiring that contracts be awarded to the lowest responsible bidder. Champaign Municipal Code § 12.5—32 (1985, as amended). Section 12.4—40 of the City's Municipal Code also specifically requires a bid bond "in an amount equal to at least ten (10) percent of the bid" for purchases over $15,000. Champaign Municipal Code § 12.5—40 (1985, as amended).

Consistent with these ordinances, the City, through its agent, issued a competitive bid packet that instructed each potential bidder to submit a bid bond "in an amount equal to ten percent (10%) of Base Bid." The City also reserved the right to reject any and all bids and waive any informalities in the bidding.

The phrase "the lowest responsible bidder" in section 12.5—32 of the City's Municipal Code appears in several statutes and has been previously interpreted by Illinois courts as not requiring a public body to award a contract to the lowest bidder. *Court Street Steak House,*

*Inc. v. County of Tazewell*, 163 Ill. 2d 159, 165, 643 N.E.2d 781, 784 (1994). "[A] public body exercises a great deal of discretion in determining the lowest responsible bidder," and little prevents the City from exercising that discretion to award the contract to Potter Electric, barring claims of "fraud, lack of authority, unfair dealing, favoritism, or similar arbitrary conduct." *Court Street Steak House, Inc.*, 163 Ill. 2d at 165, 643 N.E.2d at 784.

Moreover, even if the City had determined that Bodine's insufficient bid bond was a mere informality and thereby waivable, the City would then have been in the difficult position of characterizing one of its ordinances, specifically section 12.5—40, as an informality. In fact, had the City waived Bodine's insufficient bid bond as an informality, the City could have just as easily been sued under almost identical complaints by Potter Electric, which could have asserted that the City violated its own ordinance by waiving a material variance in the bidding requirements. *Cf. Michuda*, 97 Ill. App. 3d 340, 422 N.E.2d 1078.

Even if the trial court had found that the insufficient bid bond did not provide Bodine with a substantial competitive advantage over other bidders, the trial court would have been hard-pressed to find that the City engaged in fraud, unfair dealing, favoritism, or similar arbitrary conduct, simply because the City adhered to one of its ordinances. Certainly, the trial court here did not act arbitrarily, without employing conscientious judgment. The trial court did not exceed the bounds of reason and ignore recognized principles of law so that substantial prejudice resulted. Accordingly, we affirm the trial court's declaratory judgment ruling as proper. *First National Bank*, 7 Ill. 2d at 231, 130 N.E.2d at 277.

### D. Dismissal Of Bodine's Remaining Counts

Plaintiff next asserts that the trial court erred in dismissing the counts seeking money damages and injunctive relief because (1) the counts had not been subject to motions by the party against whom they were directed and (2) the trial court should not have allowed Potter Electric's motion to dismiss.

■ The standard of review for rulings on motions to dismiss for failure to state a cause of action and for involuntary dismissal is *de novo. AG Farms, Inc. v. American Premier Underwriters, Inc.*, 296 Ill. App. 3d 684, 688, 695 N.E.2d 882, 886 (1998). A dismissal pursuant to section 2—619 is proper where the claim asserted against defendant "is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2—619(a)(9) (West 1996).

■ In the present dispute, once the trial court determined that the submission of a 5% bid bond provided the plaintiff with a substantial

competitive advantage and, therefore, amounted to a material variance that was unwaivable by the City, the defendant's affirmative defense avoided the legal effect of or defeated Bodine's remaining claims for injunctive relief or money damages. In addition, the Supreme Court of Illinois has noted that the overwhelming weight of authority from the courts of other jurisdictions is against allowing recovery of money damages for lost profits from public contracts, and the Illinois appellate court opinions have reached the same result; the court agreed with this view. *Court Street Steak House, Inc.*, 163 Ill. 2d at 170, 643 N.E.2d at 786, quoting with approval *Beaver Glass & Mirror Co. v. Board of Education of Rockford School District No. 205*, 59 Ill. App. 3d 880, 884, 376 N.E.2d 377, 380 (1978); see also *Kim Construction Co. v. Board of Trustees*, 14 F.3d 1243, 1246-47 (7th Cir. 1994) (holding that under Illinois law, a disappointed bidder for a public contract lacks a property interest in the award, even if that bidder has submitted the lowest conforming bid).

Moreover, a close reading of the transcript reveals that the court dismissed the complaint seeking injunctive relief at the oral request of the City upon the conclusion of the hearing on the declaratory judgment. The trial court, therefore, did not dismiss the remaining counts on Potter Electric's motion to dismiss. Instead, the court declared that the remaining counts were "mooted thereby and the action is hereby dismissed with prejudice." In short, the court appeared to use its inherent power to dismiss the remaining counts of the complaint, rather than hear and rule on Potter Electric's motion to dismiss. See *Mitchell v. Norman James Construction Co.*, 291 Ill. App. 3d 927, 937-38, 684 N.E.2d 872, 881 (1997).

Illinois law does not favor lost profits money damages for disappointed bidders on public contracts and the remaining counts were rendered moot by the trial court's ruling on the declaratory judgment. Accordingly, we affirm the trial court's dismissal of the counts for injunctive relief and money damages.

## III. CONCLUSION

For the reasons stated, we affirm.

Affirmed.

KNECHT, P.J., and STEIGMANN, J., concur.