WILLIAM F. MEYERS, RICHARD DAALDER AND BYRON MORGAN, PLAINTIFFS-RESPONDENTS, v. MAYOR AND COUNCIL OF THE BOROUGH OF EAST PATERSON; WALTER A. BREDDER, CLERK OF THE BOROUGH OF EAST PATERSON, MICHAEL GEMZA, COLLECTOR OF THE BOROUGH OF EAST PATERSON, AND LOUIS DO-DERO, MAYOR OF THE BOROUGH OF EAST PATERSON, DEFENDANTS-APPELLANTS.

Argued March 12, 1956—Decided April 23, 1956.

358

*Mr. Herbert A. Chary* argued the cause for appellants (*Mr. R. Sery Nicesia,* attorney for Mayor and Council of East Paterson; *Mr. Herbert A. Chary,* attorney for Michael Gemza, Collector of East Paterson).

*Mr. Mervyn R. Montgomery* argued the cause for respondents (*Mr. Arthur J. Messineo,* attorney).

The opinion of the court was delivered by

HEHER, J.  The issue here is whether an ordinance adopted by the governing body of the Borough of East Paterson on June 17, 1954, purporting to "fix" the salary of the borough's collector of taxes and treasurer, the appellant Gemza, transgresses *R. S.* 40:46–23, as amended by *L.* 1948, *c.* 282,

empowering the governing bodies of municipalities to fix and determine the salaries, wages or compensation of its officers and employees "entitled thereto" "by law," with certain exceptions not now material, but providing that "(i)n case any officer is re-elected to succeed himself after having served one full term, his salary may be once increased during the term for which he is so re-elected."

Gemza was first elected to the office at the general election held in November 1948 for a four-year term commencing January 1, 1949; and in 1952 he was re-elected for a second four-year term beginning January 1, 1953. At the close of his first term Gemza's annual salary was $3,850 per annum, under an ordinance adopted June 3, 1952. By an ordinance adopted July 2, 1953, the annual salary was increased to $4,700, made retroactive to January 1, 1953, the day of the commencement of the second term. Meanwhile, salary payments were made at the established rate of $3,850 per annum. Then came the ordinance of June 17, 1954, now under attack, providing for a salary increase to $5,950, retroactive to January 1, 1954. The contention is that this would constitute a second salary increase during Gemza's second term of office, in contravention of the statute.

The Law Division of the Superior Court resolved the issue in the negative. The Appellate Division reversed, rejecting the premise of the present appellants' argument that "the 1952 ordinance expired December 31, 1952," offered to sustain the conclusion that the ordinance of July 2, 1953, made retroactive to January 1, 1953, "was not an increase in" the incumbent's salary "during his second term," and holding that "A municipality cannot escape the statutory restriction simply by making the first increase retroactive to the first day of the term." 37 *N. J. Super.* 122 (*App. Div.* 1955), opinion by Judge Clapp. We thereupon certified the cause for appeal.

The Appellate Division also denied a motion to dismiss the proceeding, as not brought within the time limited by *R. R.* 4:88–15(a) for a review by action in lieu of *certiorari.* Error is not now assigned on this ruling.

The argument is that the ordinance of July 2, 1953 "fixed" the "starting salary" of the office incumbent "for the second four year term at $4,700 per annum," and so the ordinance of June 17, 1954 constituted the "first increase under the statute." Invoking the interpretive rule that the motive which led to the making of the law is the key to its understanding, it is said, quoting from *McEwan v. West Hoboken,* 58 *N. J. L.* 512 (*Sup. Ct.* 1896), that the statutory principle "does not become operative until the Council, by ordinance, *first fixes such compensation,"* and the 1952 ordinance *"did not fix* the salary of the tax collector for the ensuing term," (emphasis, counsel's), but rather "for a fixed term ending December 31, 1952, and was never intended by the outgoing Mayor and Council of East Paterson to be in effect on January 1, 1953," and accordingly "an incoming municipal legislative body taking office on January 1, 1953, had the right to fix the salary for the tax collector's new term of office."

But this is an arbitrary and unrealistic assessment of the legislative intent and purpose and the pragmatic administrative considerations and experience constituting the background of legislation in the particular field. The salary established during the first term of office continued *ex proprio vigore* during the second term until increased by the ordinance of July 2, 1953. The ordained salary was "attached" to the office, as said by the Court of Errors and Appeals in *Potter v. Union Township,* 91 *N. J. L.* 129 (*Sup. Ct.* 1917), affirmed 91 *N. J. L.* 705 (*E. & A.* 1918). The salary thus fixed became and continued to be an incident of the office until changed by law, but a right to compensation growing out of the "rendition of services," as pointed out recently by Mr. Justice Jacobs in *De Marco v. Board of Freeholders of the County of Bergen,* 21 *N. J.* 136 (1956); *Winne v. County of Bergen,* 21 *N. J.* 311 (1956).

There is no discernible reason of policy why the office should continue to exist after the expiration of the incumbent's term, but the salary annexed to the office, payable

for services rendered, should cease to be until set by a new ordinance. The absence of provision for compensation would ordinarily suggest gratuitous service. And such was not the case here. Unrecompensed service was not in contemplation for any period, however short. Indeed, there was continued payment of the incumbent's salary at the ordained rate until the adoption of the ordinance of July 2, 1953; and appellants are driven to the position that the interim salary payments were made without warrant in law and the retroactive clause of the 1953 ordinance served to validate the disbursements. But such was not the design of this clause; the manifest purpose was not to fix a salary for the second term, but to increase the established salary and to have the increase run from the beginning of the year, if not indeed to give color to the contention now made. The increase of salary came not on January 1, 1953, or sometime the day before, the closing day of the first term, but on July 2, 1953, in virtue of the ordinance that day adopted. See *Ries v. West New York,* 79 *N. J. L.* 164 (*Sup. Ct.* 1909).

This destroys the force of the contention that a long-standing policy of "annual salary" ordinances suggests an "intent" to "make such ordinances applicable only to the year or years in which they were adopted." That was plainly not the course taken here. The purpose of the ordinance under review was a salary increase effective on its adoption, although retroactive in its operation. The ordinance of June 3, 1952 was not in terms limited to the calendar or fiscal year; and there is no rational ground for supposing that such was the intent of the local legislative body. The ordinance of July 2, 1953 was not retroactive in the sense that it rectified a substantive omission at the outset, and so is to be regarded for all purposes as having been done at the beginning. Such is not the sense or significance of this regulation. As to the particular office, it provided for a salary increase merely, covering also an antecedent period of service in the same category, assuming that such action is not otherwise condemned by statute. See *State ex rel. Pike v. City of Bellingham,* 183 *Wash.* 439, 48 *P. 2d* 602 (*Sup. Ct.* 1935).

The peremptory policy of *R. S.* 40:46–23 cannot be evaded by indirection. Compare *Saffore v. Atlantic Casualty Insurance Co.,* 21 *N. J.* 300 (1956). The ordinance of June 17, 1954 is *ultra vires* and void.

Affirmed.

WACHENFELD, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.