249 N.J. Super. 536 (1991)
592 A.2d 1218
L. PUCILLO & SONS, INC. AND CHETCAR REALTY, PLAINTIFFS-APPELLANTS,
v.
TOWNSHIP OF BELLEVILLE, BOARD OF COMMISSIONERS OF THE TOWNSHIP OF BELLEVILLE AND DOMENICK PUCILLO DISPOSAL, INC., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 12, 1991.
Decided July 3, 1991.
*538 Before Judges SHEBELL, HAVEY and SKILLMAN.
Donald P. Jacobs argued the cause for appellants (Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, attorneys; Donald P. Jacobs and Lisa A. Biase, on the brief).
Brian W. Mason argued the cause for respondent Township of Belleville (Lorber, Schneider, Nuzzi, Vichness & Bilinkas, attorneys; Brian W. Mason, of counsel and on the brief).
Randal W. Habeeb argued the cause for respondent Domenick Pucillo Disposal, Inc. (Diktas & Habeeb, attorneys; Randal W. Habeeb and Christine Gillen, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
Plaintiffs, L. Pucillo & Sons, Inc. and Chetcar Realty, appeal from the dismissal of their complaint in lieu of prerogative writs, which named as defendants, Township of Belleville (Township), Board of Commissioners of the Township of Belleville (Board), and Domenick Pucillo Disposal, Inc. (Domenick). The complaint, filed on November 22, 1989, challenged the Township's award of a contract for scavenger services to Domenick, alleging that the Township and the Board, "in violation of their responsibilities under N.J.S.A. 40A:11-1, et seq.," arbitrarily and capriciously awarded the contract to Domenick. The complaint sought a declaration that the contract was null and void, judgment compelling the readvertisement of the proposals for the scavenger contract, and an order restraining defendants from continued performance of the contract.
In their answer to the complaint the Township and Board challenged the plaintiffs' standing to bring the action, and asserted that the action was barred on the grounds of estoppel and because the forty-five-day period under R. 4:69-6(a) for bringing such an action elapsed. Domenick's answer raised the same defenses.
*539 On July 3, 1990, plaintiffs moved for summary judgment, and thereafter, defendants filed a motion to dismiss plaintiffs' complaint pursuant to R. 4:6-2. The Law Division judge denied plaintiffs' motion and granted defendants' motion to dismiss the complaint. In reaching this decision, the judge stated:
Two threshold issues present themselves. The first, whether the plaintiffs or either of them has standing to bring this action. And the second, whether the action is time-barred pursuant to Rule 4:69-6(a).
While I find that the plaintiffs have the requisite standing to bring this suit, at the same time I hold that this action is time-barred and does not meet the test requisite for an enlargement of the 45-day limitation period under Rule 4:69-6(a).
The pertinent facts follow. The Township issued specifications for a "scavenger contract" to commence on September 12, 1989. The extended deadline for bid submission was September 8, 1989. The relevant portions of the bidding advertisement that generated this controversy are as follows:
Section 1:3 Documents To Be Submitted With Proposal

(A) Statement of Qualifications, Experience, Financial Ability and Non-Collusion Affidavit, Affirmative Action Report full and completely answered under oath; and
(B) Proposal properly completed in accordance with the form thereof; and
(C) Certified check, bank cashier's check or bid bond in the amount of $20,000.00 or 10% of the bid proposals for the maximum term of years bid, whichever amount is less, payable to the Treasurer of the Township of Belleville in accordance with N.J.S.A. 40A:1-21.
(D) A Certificate of a Surety Company duly authorized to do business in New Jersey and satisfactory to the Board of Commissioners, setting forth that the Surety Company will furnish the required bond herein provided, if the bidder is awarded the contract, and which certificate shall state that said surety will issue a bond in form and with the indemnity requirements herein demanded and required, within (10) days of the award of the contract to the bidder in accordance with N.J.S.A. 40A: (Emphasis added).
Section 1:6 Bid Deposit

Each bidder shall accompany his Proposal with a Certified Check, cashier's check or bid bond in the amount of Twenty Thousand Dollars ($20,000.00) or 10% of the bid proposal for the maximum term of year bid whichever amount is less which sum shall be made payable to the Treasurer of the Township of Belleville. In the event that the bidder to whom the contract is awarded fails to enter into the contract in the manner and within the time required and to furnish the required Performance Bond, properly executed, the award to him shall be annulled and said amount to be deposited by him with the Proposal shall become the property of the Township of Belleville as liquidated *540 damages in partial or full payment as provided for in Section 1:6-1. (Emphasis added).
Section 1:7 Surety Company Bond

Accompanying each bid shall be a certificate from a responsible surety company stating that it will provide the bidder with a bond in the full amount of the bid. Said certificate shall be executed by a responsible surety company in good financial standing authorized to do business in the State of New Jersey, and [illegible] to the Board of Commissioners of the Township of Belleville, conditioned upon furnishing the bidder, if awarded the contract with a Performance Bond to secure the faithful uninterrupted performance of the contract, to indemnify and save harmless the Township of Belleville from all proceedings, suits or actions of any name or description and to secure the payment of all claims against the contractor including claims for services performed, materials, supplies, or equipment furnished to the contractor in the performance of work. Said performance bond shall remain in full force and effect for the time set forth in Part 2, Section 2:3. (Emphasis added).
Section 1:8 Alternate Proposals

The form of Proposal, made part of the Specifications, contained alternate bids as is indicated in said form. The bidder is requested to submit bids on each proposal. The bidder is requested to submit bids on one-year, three-year and five-year contracts. Each proposal should be separate with respect to the years so indicated.
Section 1:10 Right to Reject Bids

The Board of Commissioners reserves the right to reject any bid under the following circumstances:
(A) If the bidder fails to furnish any of the information required here in pursuance to any portion of the bidding documents or specifications.
* * * * * * * *
(C) If the proposal does not substantially conform to the requirements of the specifications.
* * * * * * * *
(F) To waive any clerical or inconsequential mistakes or errors, if to do so would be in the best interests of the Township of Belleville.
Section 1:11 Conditioned Proposals

The Bidder shall not change the Proposal, instructions to Bidder and Building Requirements, Statement of Scope and Nature of Work and shall not in any manner or form amend, change or condition by adding a new rider, clause or word. In the event the Bidder shall amend, change, modify or condition the substance of the foregoing documents, they shall be rejected.
Section 1:13 When the Contractor Is To Furnish Bond

Within ten (10) days after the awarding of the contract, but in any event prior to the execution thereof the Contractor to whom the award has been made shall execute and deliver to the Township Clerk a Performance Bond executed by a responsible surety company in good financial standing, authorized to do business *541 in the State of New Jersey, in the principal sum required in accordance with the term of the contract awarded. Failure to provide said Performance Bond prior to the date of execution of the contract shall be cause for rejecting said bid and the Township shall be entitled to damages as a result thereof, pursuant to Sections 1:6 and 1:6.1. (Emphasis added).
Section 1:14 Performance Bond

The Performance Bond shall be in the form attached hereto and made part thereof guaranteeing the faithful performance of the contract and the indemnity noted herein, and shall contain an additional obligation for the payment by the contractor for all labor performed and materials furnished in the prosecution of the work, and also an obligation to indemnify and save harmless the Township of Belleville from any and all loss, proceedings, suits, or actions of any nature or description, for damages arising or growing out of performance of the work herein specified. The contract is to be made a part of the Bond, the same as though set forth therein. The bond shall be satisfactory in all respects to the Board of Commissioners of the Township of Belleville.
The specifications enumerated the requisite amount of the performance bond under a one-, three-, or five-year contract. Section 2:3 stated:

One Year Contract  The contractor shall furnish a Performance Bond equal to the full amount of the bid which bond shall run from the effective date of the Contract and shall run for a period of one (1) year from the effective date of the contract.

Three Year Contract  The Contractor shall furnish a Performance Bond equal to the full amount of the bid which bond shall run from the effective date of the Contract and shall run for a period of three (3) years from the effective date of the contract.

Five Year Contract  In such case the Contractor shall furnish the required bond as follows:
(a) Upon execution of Contract he shall submit a Performance Bond equal to the full amount of the bid running for a period of three (3) years.
(b) Said Bond shall be renewed at the end of three (3) years in an amount equal to two-fifths (2/5's) of the full amount of the bid and shall run for a period of two (2) years, as provided in Section 1:7 hereof. [Emphasis added].
In response to the Township's invitation for bids, Domenick submitted a proposal for scavenger service for $652,538.28 for a one-year contract, $2,018,414.84 for a three-year contract, and $3,443,791.40 for a five-year contract. Domenick also submitted a certificate of surety, which contained a bold-faced restriction stating, "THE CONSENT OF SURETY CONTAINED HEREIN IS LIMITED TO A CONTRACT AWARD NOT TO EXCEED $700,000.00." Although plaintiffs obtained *542 a copy of the bid specifications, they failed to submit a bid. According to Chester Pucillo, president of L. Pucillo & Sons, Inc. and partner in Chetcar Realty, "After reviewing sections 1:3(d), 1:7 and 2:3 of the specifications, L. Pucillo and Sons, Inc. chose not to bid."
On September 11, 1989, the Board adopted a resolution awarding the contract to Domenick for a period of five years at an amount of $3,443,791.40. On that same date, the parties executed a written contract that stated:
1. The Contractor will furnish scavenger service to the Township of Belleville, New Jersey, for a period of Five (5) Years in accordance with specifications entitled, "Scavenger Contractor and Specifications, Township of Belleville, New Jersey, Effective September 12, 1989" and proposal which are attached hereto and made a part hereto as if same were recited at length.
Domenick submitted a performance bond dated September 21, 1989 in the amount of $652,060.00; however, after plaintiffs filed suit, Domenick submitted a second performance bond, also dated September 21, 1989, in the amount of $2,018,415.00, for a term of three years that states "[t]he bond may be extended for additional terms at the option of the Surety, by continuation certificate executed by the Surety." Domenick continues to perform the contract secured only by the three-year performance bond.
Plaintiff, L. Pucillo & Sons, Inc., claims that it has standing to challenge the award of the scavenger contract to Domenick, designating itself as a potential bidder that was deterred from submitting a competitive bid by specifications, which were later waived. L. Pucillo & Sons asserts that had it known "that the Township was going to waive the bond requirement as it did for defendant, Domenick Pucillo Disposal, Inc., (`Domenick'), L. Pucillo & Sons, Inc. would have submitted a bid proposal." Chetcar Realty, a general partnership owned by brothers Carmine and Chester Pucillo, asserts its standing as a taxpayer. It maintains it owns property in Belleville.
Defendants contest the motion judge's finding that both L. Pucillo & Sons and Chetcar Realty have standing. However, *543 we are satisfied, based on the record, that L. Pucillo & Sons, as a potential bidder, and Chetcar Realty, as a taxpaying partnership in the Township of Belleville, had the requisite standing. See Reilly v. Brice, 109 N.J. 555, 557, 538 A.2d 362 (1988); Capasso v. L. Pucillo & Sons, Inc., 132 N.J. Super. 542, 546, 334 A.2d 370 (Ch.Div.), aff'd, 132 N.J. Super. 473, 334 A.2d 334 (App.Div. 1974) and Albanese v. Machetto, 5 N.J. Super. 605, 68 A.2d 659 (Law Div. 1949), aff'd, 7 N.J. Super. 188, 72 A.2d 521 (1950) (taxpayers have standing); see also Band's Refuse Removal v. Fair Lawn, 62 N.J. Super. 522, 539, 163 A.2d 465 (App.Div.), certif. denied, 33 N.J. 387, 164 A.2d 849 (1960) and Capasso, 132 N.J. Super. at 546-47, 334 A.2d 370 (potential bidders have standing to contest public bidding contracts).
Plaintiffs claim that the complaint was improperly dismissed under R. 4:69-6. Plaintiffs allege that defendants' improper performance of the contract is a continuing violation of public bidding laws, and therefore, the time for bringing the complaint has not elapsed. Alternatively, they argue that even if the complaint were technically barred by the forty-five-day period, the Law Division should have extended the time due to the public interest involved in this case.
R 4:69-6(a) establishes a forty-five-day period within which actions in lieu of prerogative writs may be instituted. It provides that "[n]o action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to review, hearing or relief claimed...." R. 4:69-6(a). The Township awarded the contract to Domenick on September 11, 1989, and Domenick submitted its deficient performance bond on or about September 21, 1989. Plaintiffs did not file their complaint until November 22, 1989; thus, unless a continuing violation is found, it is clear that the forty-five-day period elapsed prior to the institution of this action.
A court "may enlarge the period of time provided in paragraph (a) ... of this rule where it is manifest that the interest of justice so requires." R. 4:69-6(c). Plaintiffs argue that the *544 important public interest in protecting the integrity of public bidding mandates extension of the forty-five-day limitation. However, we first consider plaintiffs' contention that no extension of the forty-five-day limitation is necessary because the performing of the contract is a continuing violation and the complaint was therefore timely. The motion judge rejected that argument, reasoning:
[S]ince the Township waived the five-year bond, it is not the performance of the contract which is illegal, but rather arguendo, the award which would have been illegal. This is different than the cases that were cited by the plaintiffs in their reply brief in both of which cases involved illegal holding of offices. And I'm referring again to the Jones v. MacDonald, 33 N.J. 132 [162 A.2d 817] (1960), as well as Meyers v. Mayor and Council of the Borough of East Paterson, 37 N.J. Super. 122 [117 A.2d 27] (App.Div. 1955), aff'd, 21 N.J. 357 [122 A.2d 337] (1956).
The decision in Jones v. MacDonald, 33 N.J. 132, 162 A.2d 817 (1960) involved a challenge to the holding of dual offices by a government official. The complaint challenging the arrangement was instituted later than forty-five days from the date the official took title to the first public office. The Court held that even if the action were technically time-barred, the arrangement could not escape scrutiny. The Court stated:
What defendant really urges is that an unlawful claim to office should pass beyond judicial cognizance 45 days after such private action. Quite obviously, title to public office cannot be acquired by some sort of prescriptive right under the cited ruled. To put it another way, each purported exercise of the right of office by one without title to it constitutes a fresh wrong. Cf. Meyers v. Borough of East Paterson, 37 N.J. Super. 122, 128 [117 A.2d 27] (App.Div. 1955), aff'd, 21 N.J. 357 [122 A.2d 337] (1956). [Id. 33 N.J. at 138, 162 A.2d 817].
Similar reasoning in Meyers v. Mayor of the Borough of East Paterson, 37 N.J. Super. 122, 117 A.2d 27 (App.Div. 1955), aff'd, 21 N.J. 357, 122 A.2d 337 (1956) led the court in that case to conclude that the right to challenge an illegal salary accrues with each payment of that salary. Id. 37 N.J. Super. at 128, 117 A.2d 27. The court held that the "payments are to be regarded as several illegal or unlawful acts, cf. Morey v. Essex Cty., 94 N.J.L. 427, 430, 110 A. 905 (E. & A. 1920) ... `each step * * * an unlawful vexation' remediable through a proceeding in lieu *545 of prerogative writ." Meyers, 37 N.J. Super. at 128, 117 A.2d 27.
Thus, the courts in Jones and Meyers dissected the alleged improper conduct and found independent violations by virtue of the continuation of the event. These decisions, however, do not suggest that such a view is appropriate in all cases of alleged breach or misconduct. Here, we are satisfied that the alleged wrongs of awarding the contract to an unqualified bidder and accepting an insufficient performance bond were acts that were completed and ripe for challenge at the time of the events. We find no basis to conclude that they were continuing violations. This we find to be true even though the certificate of surety and bond requirements were, in these circumstances, material to the contract and, therefore, unalterable. See Palamar Constr. Inc. v. Township of Pennsauken, 196 N.J. Super. 241, 250-51, 482 A.2d 174 (App.Div. 1983) ("[A] public contract cannot be awarded upon terms which are different from those contained in the invitation to bid."); see also Stano v. Soldo Constr. Co., 187 N.J. Super. 524, 535, 455 A.2d 541 (App.Div. 1983) ("The purpose of bidding statutes is to secure the benefits of competition for the public, and they are to be strictly construed to achieve this end.").
It is well-settled that a material defect in a bid may not be waived or cured after the violation has occurred. See L. Pucillo & Sons, Inc. v. Mayor of the Borough of New Milford, 73 N.J. 349, 352, 375 A.2d 602 (1977); Palamar, 196 N.J. Super. at 254, 482 A.2d 174; Impac Inc. v. City of Paterson, 178 N.J. Super. 195, 202, 428 A.2d 553 (App.Div.), certif. denied, 87 N.J. 414, 434 A.2d 1089 (1981); J. Turco Paving Contractor, Inc. v. Council of the City of Orange, 89 N.J. Super. 93, 103, 213 A.2d 865 (App.Div. 1965). In L. Pucillo & Sons, Inc. v. Mayor of New Milford, 73 N.J. at 349, 375 A.2d 602, the Court considered the validity of a waiver of certain bidding specifications regarding a garbage scavengers contract. There, the specifications stated that the bidder "must" bid on contracts of *546 one-, two-, three-, and five-years duration; the successful bidder, however, failed to submit a proposal for the five-year contract. Id. at 351, 375 A.2d 602. The Court turned its focus to whether that requirement was "mandatory or permissive." Id. at 352, 375 A.2d 602. The Court held the condition that a bid be submitted on a five-year contract was material "because its presence `may have deterred others from bidding who would have bid had they known that these conditions would be waived.'" Id. at 358, 375 A.2d 602 (quoting Case v. Trenton, 76 N.J.L. 696, 700, 74 A. 672 (E. & A. 1909)). Thus, the Court set aside the contract to allow for new bids on the remaining contract. Id. at 359, 375 A.2d 602; see also Bryan Constr. Co. v. Board of Trustees of the Public of Montclair, 31 N.J. Super. 200, 106 A.2d 303 (App.Div. 1954) (using the same analysis, the court found submission of a bid bond rather than a certified check as security did not prevent anyone from bidding or place bidders on unequal footing; thus, no material deviation from specifications existed).
In the case of In re the Award of the Contract for the Construction of Bayonne Park, 168 N.J. Super. 33, 401 A.2d 705 (App.Div. 1979), we relied upon the Pucillo decision in holding that the requirement that a performance bond be provided within ten days of the award of a contract was material and nonwaivable. We refused to hold that the failure to submit a performance bond in the proper time frame was cured by the submission of the proper bond after a significant delay. Compare with Marvec Allstate, Inc. v. Gray & Fear, Inc., 148 N.J. Super. 481, 372 A.2d 1156 (App.Div. 1977) (discrepancy in bid bond was waivable when corrected within twenty-four hours), disapproved, In re Contract for Route 280, 89 N.J. 1, 444 A.2d 51 (1982), and Township of Hanover v. International Fidelity Ins. Co., 122 N.J. Super. 544, 301 A.2d 163 (App.Div. 1973) (holding that variance of $1,885 in bond amount was inconsequential and waivable).
*547 "The common thread in these decisions is whether the defect threatens the policies underlying the competitive bidding statutes." Palamar, 196 N.J. Super. at 255, 482 A.2d 174. The test of materiality has been reduced to the following two-prong analysis:
There must, therefore, be applied two criteria in determining whether a specific noncompliance constitutes a substantial and hence nonwaivable irregularity  first, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition. [Id. at 255, 482 A.2d 174 (quoting Township of River Vale v. Longo Constr. Co., 127 N.J. Super. 207, 212, 316 A.2d 737 (Law Div. 1974)].
Applying that test to the present situation, we are compelled to conclude that the Township could not waive the security requirements set forth in its bid specifications. Clearly, other bidders may have been deterred by the surety requirement in the original specifications. See Pucillo, 73 N.J. at 357-58, 375 A.2d 602.
That the provision of adequate security is of concern to the Legislature is evidenced by N.J.S.A. 40A:11-22 which provides:
When a surety company bond is required in the advertisement or specifications for a contract or agreement, every contracting unit shall require from any bidder submitting a bid in accordance with plans, specifications and advertisements, as provided for by law, a certificate from a surety company stating that it will provide the contractor with a bond in such sum as is required in the advertisement or in the specifications.
This certificate shall be obtained for a bond 
(1) For the faithful performance of all provisions of the specifications or for all matters which may be contained in the notice to bidders, relating to the performance of the contract or agreement....
The certificate of surety supplied by Domenick failed to comply with the specifications. The specifications clearly required that a certificate of surety, guaranteeing a bond in "the full amount of the bid" be posted. Further, the first performance bond varied in amount from the specifications by nearly three million dollars. The revised performance bond, submitted approximately four months after the time required by the *548 specifications, remained one million dollars short of the total amount of the bid and, after three-years duration, leaves the taxpayers without the required statutory guarantee that the surety company will provide a bond for the remaining two years of the contract.
In addition, renewability was at the surety's option. Thus, Domenick, in furnishing a performance bond on the five-year contract, did not comply with Section 2.3 of the specifications which stated in part:

Five Year Contract  In such case the Contractor shall furnish the required bond as follows:
(a) Upon execution of Contract he shall submit a Performance Bond equal to the full amount of the bid running for a period of three (3) years.
(b) Said Bond shall be renewed at the end of three (3) years in an amount equal to two-fifths (2/5's) of the full amount of the bid and shall run for a period of two (2) years, as provided in Section 1:7 hereof [requiring a certificate from a reasonable surety company stating it will provide the bidder with a bond in the full amount of the bid]. [Emphasis added].
To summarize, we conclude that Domenick's deviations from the specifications were material and, therefore, nonwaivable. That those requirements were not properly waived, however, would not invariably make performance of the contract illegal or invalid. Nonetheless, long-standing judicial policy would ordinarily require, if a timely action were filed, that the contract be set aside. However, as noted, we find no continuing violation to prevent the operation of the forty-five day time-bar, as we perceive the challenged conduct to be the award of the contract despite noncompliance with the bid specifications. We therefore turn to whether the bar of R. 4:69-6 should be relaxed to afford relief to the plaintiff.
The forty-five-day time-bar, contained in R. 4:69-6(a), may be enlarged "where it is manifest that the interest of justice so requires." R. 4:69-6(c). The expansion provision of Section (c) does not define the precise circumstances under which the interest of justice would require relaxation of the forty-five-day period. The comment to the rule explains that "Paragraph (c) of the rule was added by 1957 amendment of the source rule *549 and was intended `to restate in the form of a generalized standard, decisional exceptions which had already been engrafted upon the rule'." Pressler, Current N.J. Court Rules, Comment R. 4:69-6(c).
In Brunetti v. Borough of New Milford, 68 N.J. 576, 585-87, 350 A.2d 19 (1975) (footnotes omitted), the Supreme Court summarized the general exceptions that had developed through case law. The Court stated:
In Ward v. Keenan, 3 N.J. 298 [70 A.2d 77] (1949), this Court recognized that the creation of the in lieu proceeding by the Constitution of 1947 was not intended to discard "the substantive law of the former prerogative writs as a means of safeguarding individual rights against public officials and governmental bodies," but was meant to avoid the "defects of procedure that led to criticism." Id. at 308 [70 A.2d 77]. As a result, exceptions based on prior decisional law were soon engrafted upon the rules governing in lieu proceedings. Schack v. Trimble, 28 N.J. 40, 47-48 [145 A.2d 1] (1958). In particular, the courts held that certain cases were excepted from the rule governing limitation of actions. See Pressler, Current New Jersey Court Rules, Comment R. 4:69-6 at 750 (1975). These exceptions included cases involving (1) important novel and constitutional questions; (2) informal or ex parte determinations of legal questions by administrative officials; and (3) important public rather than private interests which require adjudication or clarification. [Id. at 585-86, 350 A.2d 19 (emphasis added) (footnotes omitted)].
More recently, in Reilly v. Brice, 109 N.J. 555, 538 A.2d 362 (1988), the Supreme Court examined the instances in which the public interest compels expansion of the time limitation. The Court determined that the factual setting, which involved the challenge by taxpayers of a municipal "consulting" contract, called for enlargement of the R. 4:69-6(a)'s time-bar. Id. at 560, 538 A.2d 362. The Court summarized applicable case law as follows:
Among the decisions cited for guidance in Brunetti was Riddlestorffer v. Rahway, 82 N.J. Super. 36, 43 [196 A.2d 550] (Law Div. 1963), where the court permitted enlargement of the time within which to review a contract between a city and a company that was to provide hospitalization benefits for the city's employees and their families. Other factors that will ordinarily guide courts include whether there will be a continuing violation of public rights, Jones v. MacDonald, 33 N.J. 132, 138 [162 A.2d 817] (1960) (holding that "each purported exercise of the right of office by one without title to it constitutes a fresh wrong"); whether individual installments or payments are to be made under the challenged contract, Meyers v. Mayor and Council of the Borough of East *550 Paterson, 37 N.J. Super. 122, 128 [117 A.2d 27] (App.Div. 1955), aff'd, 21 N.J. 357 [122 A.2d 337] (1956) (successive payments of salary under illegally created position constitute separate remediable acts); whether the question will have a continuing impact on the parties, Reahl v. Randolph Tp. Mun. Utils. Auth., 163 N.J. Super. 501, 510 [395 A.2d 241] (App.Div. 1978), certif. denied, 81 N.J. 45 [404 A.2d 1146] (1979) (holding power of municipal authority to charge standard annual rate for sewer services was a question of public importance); whether the plaintiffs seek injunctive or other equitable relief in addition to the review of government action, Thornton v. Village of Ridgewood, 17 N.J. 499, 510 [111 A.2d 899] (1955) (holding equitable relief not barred by statute of limitations). [Reilly, 109 N.J. at 558-59, 538 A.2d 362]
After noting these important public interests, the Reilly Court recognized the competing "important policy of repose expressed in the forty-five day rule." Id. at 559, 538 A.2d 362. The Court recognized that these interests must be balanced against each other in order to evaluate the propriety of expanding the time limit. Id. In so balancing, courts ensure that the purpose of the statute of limitations, "to encourage parties not to rest on their rights," is safeguarded. Id.; see also Washington Tp. Zoning Bd. Of Adjustment v. Washington Tp. Planning Bd., 217 N.J. Super. 215, 225, 525 A.2d 331 (App.Div.), certif. denied, 108 N.J. 218, 528 A.2d 36 (1987) ("R. 4:69-6 is aimed at those who slumber on their rights, ... and is designed to give an essential measure of repose to actions taken against public bodies.").
Here, the motion judge performed the balancing test as follows:
Assuming arguendo, that the failure of Domenick Pucillo Disposal to provide the five-year bond was a material deviation, yet given the problems known to the citizens and taxpayers of every municipality in New Jersey in relation to the disposal of garbage, and the ever-mounting cost thereof, of which I can take judicial notice, it can hardly be said to be in the public interest to set aside this contract and opening it to re-bidding more than a year after the contract  the performance of the contract was commenced.
The judge also considered that Domenick's bid was one million dollars under the next lowest bid. In addition, she recognized the possibility that plaintiffs lacked good faith in bringing the claim due to Chester Pucillo's admission that his trucks were not properly licensed. Thus, "[b]alancing the policy of repose against the public interest in the integrity of the bidding *551 process, but considering as well the factors above," the judge refused to exercise her discretion to enlarge the time period.
Not only did plaintiff fail to file this action within the required forty-five day time period of the rule, it then took no action to expedite the matter in any way. Thus, we agree that plaintiffs' shortcomings should, as the Law Division judge determined, preclude the setting aside of the bidding and contract, particularly in light of the escalation in the cost of garbage disposal since the execution of the contract nearly two years ago. We are concerned, however, that the judge's decision in these circumstances, while otherwise well-reasoned, leaves the public interest, to which Reilly and Section (c) refer, in a position of peril to the detriment of the municipal taxpayers if unremedied. Plaintiffs' failure to institute this action expeditiously or to prosecute it with all of the tools available for accelerated and prompt relief should not serve to deny the public the protection required.
We cannot, in these circumstances, permit a deviation from the bid specifications of this magnitude without assurance that the public will be protected. The deviation, if permitted to stand, will leave the Township totally unprotected from a possible breach by Domenick at the end of the three years. Further, the Township has been partially unprotected since the award of the contract because the bond did not cover the full amount of the five-year contract.
We, therefore, find it to be in the public interest to enlarge the time limitation of R. 4:69-6(a) for the limited purpose of compelling enforcement of the original non-waivable surety requirements. We remand this matter to the Law Division for entry of an appropriate order to compel the defendants to forthwith fully comply with the bid specifications by posting a bond that is in accordance with the requirements of Section 2.3 of the original bid specifications.
Reversed and remanded.