**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1030-25

IN THE MATTER OF NEW
JERSEY TRANSIT
CORPORATION REQUEST
FOR PROPOSAL NO. 0000035.

_____

Argued February 3, 2026 – Decided February 25, 2026

Before Judges Rose and DeAlmeida.

On appeal from the New Jersey Transit.

Maeve E. Cannon argued the cause for appellant Aetna Life Insurance Company (Stevens & Lee, PA, attorneys; Maeve E. Cannon, Patrick D. Kennedy and Michael A. Cedrone, of counsel and on the brief).

Jennifer Borek argued the cause for respondent New Jersey Transit Corporation (Genova Burns LLC, attorneys; Jennifer Borek and Brian D. MacNiven, on the brief).

Rachel M. Dikovics argued the cause for respondent Horizon Blue Cross Blue Shield of New Jersey (Lowenstein Sandler, attorneys; Rachel M. Dikovics, on the brief).

PER CURIAM

We granted Aetna Insurance Company's (Aetna) emergent application to stay the implementation of a health benefits administration contract awarded to Horizon Blue Cross Blue Shield of New Jersey (Horizon) under New Jersey Transit Corporation's (NJ Transit) Request for Proposal No. 0000035 (the RFP), and accelerate the appeal of NJ Transit's November 13, 2025 final agency decision. As it did before the agency, Aetna argues NJ Transit's decision was arbitrary, capricious and unreasonable, and two provisions of Horizon's proposals were material deviations from the RFP. For the reasons that follow, we reject these contentions and affirm.

I.

We summarize the pertinent facts and events from the record provided on appeal. On December 1, 2023, NJ Transit issued the RFP, seeking proposals from qualified firms for "Group Self-Insured Medical Administrative Services Only" with an effective coverage date of July 1, 2024. In the RFP, NJ Transit disclosed Horizon was the current administrator of its medical plans. The RFP required proposers "match or surpass all current medical plan designs" or "describe each deviation" from the current plan designs "in detail." NJ Transit "reserve[d] the right to eliminate those proposals from further consideration."

A-1030-25

The contract term was set at thirty-six months beginning July 1, 2024, with two one-year renewals at NJ Transit's sole discretion.

The RFP provided for evaluation of all proposals by the Technical Evaluation Committee (TEC), which "consist[ed] of members from various departments within NJ Transit." The RFP indicated the overall score would be evaluated by assessing "cost" at thirty percent, and "technical" elements, including "[n]etwork strength and match," "[o]rganization experience and stability," "[a]dministrative and service capabilities," and "[c]linical programs," at seventy percent.

The "Negotiations" section of the RFP provided, "NJ Transit w[ould] enter into negotiations with the highest ranked Proposer" and "consider[] all elements of the Proposal subject to negotiations." This section further stated, negotiations would cease "[i]f a satisfactory contract c[ould] not be negotiated." In that case, NJ Transit would conduct negotiations "with the next highest ranked Proposer." That process would continue "until a satisfactory contract [was] negotiated."

In the next section titled, "Approval and Award," the RFP stated:

> Once negotiations have been completed, a recommendation for award of the Contract to the Proposer, whose Proposal conforms to the RFP and is most advantageous to NJ TRANSIT, price and other factors considered, will be issued for approval by NJ TRANSIT'S Board of Directors. Upon the Board's

3

approval of the recommendation for award, NJ TRANSIT will enter the Agreement found in Exhibit 1.

In January 2024, Aetna and Horizon submitted proposals in response to the RFP. The TEC initially gave Aetna's proposal a total score of 1974.7 (638.9 cost plus 1335.8 technical). Horizon's proposal received a total score of 1853.9 (584.6 cost plus 1269.3 technical). Oral presentations by both Proposers were held on March 1, 2024. Thereafter, the TEC gave Aetna a final score of 2002.8 (638.9 cost plus 1363.9 technical) and Horizon a final score of 1853.2 (584.6 cost plus 1268.6 technical).

On March 25, 2024, NJ Transit's Acting Director of Professional Services emailed Aetna, stating:

> Great News!!!! NJ TRANSIT has completed its evaluation of the proposals received in response to the subject RFP and Aetna is determined to be the highest ranked firm. The award of a Contract to Aetna is contingent upon NJ TRANSIT and Aetna reaching an agreement on the terms and conditions of the Contract and approval by NJ TRANSIT Board of Directors at the July 2024 Board Meeting.

NJ Transit and Aetna agreed to meet on March 29, 2024, but NJ Transit canceled the meeting the day prior and, notwithstanding Aetna's efforts, the meeting was not rescheduled. In a July 11, 2024 letter to NJ Transit, Aetna noted NJ Transit failed to communicate with Aetna during the intervening

4

months and sought "written confirmation that NJ Transit [wa]s committed to finalizing the contract with Aetna for approval by [NJ Transit's] Board." In response, NJ Transit stated:

> NJ Transit has been dealing with a number of well-reported issues relating to its business, including but not limited to train delays, budget discussions and union[-]related issues, but is still undertaking administrative steps with respect to the RFP in accordance with its applicable rules and regulations and will contact Aetna promptly about the RFP.

In its ensuing November 13, 2025 decision, NJ Transit explained a switch to Aetna "might affect" its numerous collective bargaining agreements (CBA) with various NJ Transit unions. Several of these CBAs contained language requiring NJ Transit "to contract with Horizon or provide medical benefits equal to or better than Horizon." Further, NJ Transit's "Senior Vice Presidents for bus, light rail, rail[,] and police met with union leadership" about the potential switch, and the union leadership voiced their objections.

The record reveals several union heads objected to the proposed switch from Horizon to Aetna. In particular, during a July 24, 2024 NJ Transit Board meeting, Amalgamated Transit Union Chair Orlando Riley, spoke on behalf of the "thousands of . . . NJ Transit bus operation agreement employees." Although Riley acknowledged the relevant CBA gave NJ Transit "the right to change

5

insurance carriers, provided such coverage w[ould] result in equal or better coverage," he argued a lesser cost plan would not result in better coverage. Riley asked the Board to "not turn your back on us by switching from healthcare coverage which has covered our members excellent [sic] over the last decades." Several union members accompanied Riley at the meeting.

At the same meeting, Jerome Johnson, head of Smart-TD, Local 60 (Smart-TD), also spoke against the switch in providers. According to Johnson, "This abrupt change of our health care administrator can seriously affect our members, their spouses, their children, [and] their serious health welfare condition." Johnson also expressed concerns about the lack of information provided by NJ Transit, in particular whether members' doctors would be in-network under the Aetna plan. Johnson asked the Board "to not allow our members to be assaulted again by changing the administ[rator]" of NJ Transit's healthcare plan.

In his September 9, 2024 correspondence to NJ Transit, Chairman of the Brotherhood of Locomotive Engineers and Trainmen (BLET) Thomas Haas wrote to NJ Transit noting the lack of any provision in the CBA between NJ Transit and BLET permitting the "unilateral substitution or replacement of health insurance or prescription drug benefits." In the letter, Haas stated a

6

unilateral change in carriers "w[ould] represent a violation of the status quo provision of the Railway Labor Act . . . and would constitute a major dispute under the law."

Later that month at the September 18, 2024 NJ Transit Board meeting, Riley and Johnson again voiced their opposition to a switch to Aetna. Riley reiterated his comments at the October 10, 2024 meeting, warning the Board he "and the other union representatives will fight like hell to keep" NJ Transit employees' "benefits intact." Gregory Roberts, Smart-TD's vice general chairman, also spoke at the meeting and asked the Board not to replace Horizon with Aetna "solely" because Aetna "was the lowest bidder."

At the December 11, 2024 NJ Transit Board meeting, the Board unanimously approved, with one recusal, a resolution awarding the contract to Horizon, which it acknowledged was the second-ranked proposer. The resolution provided, in pertinent part:

> WHEREAS, union leadership and its representatives objected to a proposed switch to Aetna, including, but not limited to appearing before the NJ TRANSIT Board of Directors on multiple occasions expressing publicly their belief that a switch to Aetna would adversely affect their members' ability to receive medical care and their desire for NJ TRANSIT to continue to contract with Horizon for the administration of medical benefits; and

A-1030-25

WHEREAS, the NJ TRANSIT Board of Directors can reject proposals and award a contract to a second-ranked firm when such rejection "is in the public interest to do so" and where the award "will be the most advantageous to the corporation [NJ TRANSIT], price and other factors considered"; and

WHEREAS, NJ TRANSIT's award of a contract to Horizon will ensure continuity of the provision of medical benefits to NJ TRANSIT agreement and non-agreement employees and their dependents and promote labor harmony;

NOW, THEREFORE, BE IT RESOLVED, that the Chair or President & CEO is authorized to enter into NJ TRANSIT Contract No. 0000035 with Horizon . . . for Administration of Self-Funded Medical Plan, which contract will provide administration of medical benefits to active and retired NJ TRANSIT employees and their eligible dependents, beginning January 1, 2026, for a period of three years, and two one-year renewal option periods, on terms and conditions and at costs to be agreed upon by the parties, subject to the availability of funds.

[(alteration in original).]

Individual Board members explained their votes in public comments.

Richard A. Maroko stated:

I have reviewed the correspondence and the testimony from the employee representatives regarding [t]he change in health insurance administrator. And it seems to me that switching health insurance providers creates two significant problems to the agency. The first is a significant risk of litigation, which, without commenting on the specific merits of any threatened

8

litigation, I think would be problematic for the agency. Putting aside any potential litigation, it would certainly, without question, undermine employee morale and be very harmful to labor relations.

And I think those considerations outweigh any proposed savings that may be gained from switching. And, for that reason, in my discretion, it is my conclusion that it is not in the best interest of the agency, the ridership, or the State to switch insurance carriers. And, for that reason, I will be voting to keep the current insurance policy until something different is negotiated with the applicable unions.

Board Member Shanti Narra concurred with Maroka's statement. Board Member Anthony N. Abrantes added, "cheaper insurance doesn't always necessarily translate into better service or better quality" and noted "at the expense of our riders, our workforce, and the agency, I think it's in the best interest that we maintain the policies that we have."

On December 24, 2024, NJ Transit notified Aetna and Horizon of its intent to award the contract to Horizon. Aetna thereafter filed a bid protest seeking a "stay of the contract award and implementation"; "production of the entire record underlying NJ Transit's decision to award the contract to Horizon";[1] and

---

[1] Aetna also sought documents from NJ Transit. A dispute later arose, under the Open Public Records Act, N.J.S.A. 47:1A-1 to -13, regarding documents NJ Transit asserted were exempt from production and, in April 2025, Aetna filed a denial of access complaint in the Law Division. On November 5, 2025, the trial

"an in-person hearing to rebut the assertions relied upon in denying its proposal." NJ Transit agreed to stay implementation of the contract award pending its consideration of the protest. Horizon and Aetna ultimately agreed to extend their proposals through March 31, 2026.

On November 13, 2025, NJ Transit issued a thirty-eight-page written final administrative decision detailing its factual findings and squarely addressing Aetna's bid protest in view of the governing law. Quoting the relevant sections of the New Jersey Public Transportation Act of 1979 (the Act), N.J.S.A. 27:25-1 to -24, NJ Transit recognized its authority to award the contract to "the responsible bidder whose proposal 'w[ould] be the most advantageous to the corporation, price and other factors considered'" under N.J.S.A. 27:25-11(c)(2), and "reject proposals and award to a second-ranked firm when it 'determine[s] that it is in the public interest to do so'" pursuant to N.J.S.A. 27:25-11(c).

In its analysis, NJ Transit rejected Aetna's argument that the administrative record failed to support the Board's decision to award the contract to Horizon as "Aetna's proposal was the most advantageous to NJ Transit when

_____

court dismissed Aetna's complaint and Aetna thereafter filed a notice of appeal. Aetna's appeal is pending before this court, Aetna Life Insurance Company v. New Jersey Transit Corporation and Horizon Blue Cross Blue Shield of New Jersey, No. A-1031-25, but has not yet been scheduled.

considering price and other factors." Instead, NJ Transit found the Board relied on various information including the RFP, proposals and scoring sheets, CBAs with multiple labor unions, the "public statements made at Board Meetings" and "correspondence from union leadership."

Citing our decision, In re NJ Transit, 473 N.J. Super. 261 (App. Div. 2022), NJ Transit noted the "strikingly similar" factual and legal issues between both cases. Quoting that decision, NJ Transit determined the Board was not "required to adopt the proposal recommended by the [TEC], or to afford the [TEC]'s evaluation any deference." See id. at 275. Further, the contract award was "'plainly subject to approval by the NJ Transit Board, whose members, in performing their duties, can take into consideration the views and policies of any . . . person' and must apply 'independent judgment in the best interest of'" NJ Transit. See ibid. NJ Transit also recognized "[t]he Board has broad discretionary authority to reject proposals when it 'determines "it is in the public interest to do so"' and can consider any factor it 'deems to be in the public interest.'" See id. at 276.

NJ Transit determined it had no obligation to negotiate with Aetna notwithstanding Aetna's higher score. In doing so, NJ Transit found the Board properly considered "labor disharmony" as a factor in the contract award under

11

both <u>NJ Transit</u>, 473 N.J. Super. at 276, and <u>Keyes Martin & Co. v. Dir., Div. of Purchase & Prop.</u>, 99 N.J. 244, 256 (1985). For example, NJ Transit noted the BLET ultimately engaged in a three-day strike in May 2025 "based on a dispute over the terms of the collective bargaining agreement which caused an unprecedented and extraordinary disruption" of the NJ Transit rail system.

Citing Maroko's comments, NJ Transit further found the "Board of Directors reasonably and properly determined": "an award to Aetna could 'undermine employee morale and be very harmful to labor relations'"; "the possibility of labor unrest outweighed 'any proposed savings that may be gained from switching' to Aetna"; "'it [wa]s not in the best interest of the agency, the ridership, or the State to switch insurance carriers' to Aetna"; and "it was in the best interest of NJ Transit 'to keep the current insurance' with Horizon."

In the next several pages of its decision, NJ Transit countered Aetna's remaining contentions. In particular, NJ Transit rejected Aetna's argument that Horizon's proposal contained material defects because it contained language that Horizon's proposal was "informational," "not intended to be a binding offer," and failed to comply with the RFP requirement that the contract awardee provide 150 days advance notice of the renewal rates – as Horizon agreed only to provide sixty days' notice. NJ Transit found the "information" language was not a

A-1030-25

deviation, and Horizon's proposed change in the number of days was not a material deviation from the RFP.

Ultimately, NJ Transit denied Aetna's protest. Concluding Aetna failed to satisfy a probability of success on the merits, NJ Transit also denied Aetna's request for a stay.

II.

Well-settled principles guide our review. "In light of the executive function of administrative agencies, judicial capacity to review administrative actions is severely limited." George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994). Thus, "[a]ppellate courts must defer to an agency's expertise and superior knowledge of a particular field." Thurber v. City of Burlington, 191 N.J. 487, 502 (2007) (alteration in original) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). "The deferential standard is consistent with 'the strong presumption of reasonableness that an appellate court must accord an administrative agency's exercise of statutorily delegated responsibility.'" In re Att'y Gen. L. Enf't Directive Nos. 2020-5 & 2020-6, 246 N.J. 462, 489 (2021) (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). An appellate court may "intervene only in those rare circumstances in which an agency action is clearly inconsistent

13

with its statutory mission or with other State policy." George Harms, 137 N.J. at 27. In applying the deferential standard, the judicial role in reviewing an agency decision is generally limited to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [In re Att'y Gen. L. Enf't Directive, 246 N.J. at 489-90 (quoting In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385-86 (2013)).]

"The public interest underlies the public-bidding process in this State." Barrick v. State, 218 N.J. 247, 258 (2014). "[P]ublic bidding statutes exist 'for the benefit of the taxpayers and are construed as nearly as possible with sole reference to the public good. Their objects are to guard against favoritism, improvidence, extravagance and corruption; their aim is to secure for the public the benefits of unfettered competition.'" Ibid. (quoting Keyes Martin, 99 N.J. at 256). Nonetheless, the judicial discretion accorded to an agency "to administer the State public bidding process, while broad, is not limitless." In re Request for Proposals ##17DPP00144, 454 N.J. Super. 527, 559 (App. Div. 2018).

A-1030-25

"An agency's choice from among responsible bidders . . . is reviewed under the gross abuse of discretion standard."  Barrick, 218 N.J. at 258. However, an agency's determinations "as to responsibility of the bidder and bid conformity are to be tested by the ordinary standards governing administrative action."  In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., Bid No. 95-X-20175, 279 N.J. Super. 566, 593 (App. Div. 1995).  Thus, "an appellate court will not upset an agency's ultimate determination unless the agency's decision is shown to have been 'arbitrary, capricious, or unreasonable, or [ ] not supported by substantial credible evidence in the record as a whole.'" Barrick, 218 N.J. at 259 (alteration in original) (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).

NJ Transit is a public corporation created by the Act and tasked with "operat[ing] and improv[ing] a coherent public transportation system in the most efficient and effective manner."  N.J.S.A. 27:25-2(b).  Toward that end, NJ Transit's powers are "vested in the voting members of the board."  N.J.S.A. 27:25-4(e).  And its Board members are required to perform their duties

> in good faith and with that degree of diligence, care, and skill which an ordinarily prudent person in like position would use under similar circumstances, and may take into consideration the views and policies of any elected official or body, or other person and

> ultimately apply independent judgment in the best interest of the corporation, its mission, and the public.

> [N.J.S.A. 27:25-4.1(b)(1) (emphasis added).]

N.J.S.A. 27:25-11(c) of the Act governs bids and contract awards. The statute provides, "for contracts for the construction or improvement of capital facilities," "[a]wards shall be made by the corporation" to "the lowest responsible bidder." N.J.S.A. 27:25-11(c)(1). However, for "all other advertised contracts," NJ Transit shall award the contract to "the responsible bidder whose bid or proposal, conforming to the invitation for bids or request for proposals, will be the most advantageous to the corporation, price and other factors considered, or offer the best value to the corporation on federally funded procurements." N.J.S.A. 27:25-11(c)(2); see also N.J.A.C. 16:72-3.13[2] (providing "award shall be made to that responsible proposer whose proposal, conforming to the request for proposals, is the most advantageous to the State, price and other factors considered, and/or provides the best value pursuant to the governing law applicable to the RFP"). NJ Transit may reject "any or all bids . . . when the corporation shall determine that it is in the public interest to do so." N.J.S.A. 27:25-11(c).

---

[2] On January 5, 2026, this regulation was recodified from N.J.A.C. 16:72-3.12. However, the language remains the same.

## A.

Aetna argues that the Board's decision awarding the contract to Horizon was arbitrary, capricious and unreasonable because the Board lacked the discretion to rely on "criteria not included in the RFP," that is, the threat of labor disharmony if NJ Transit's employee medical plans were switched to Aetna. Although Aetna recognizes NJ Transit may consider public sentiment and the public interest in its overall evaluation, Aetna asserts NJ Transit "deliberately declined to address the accuracy or veracity of that public sentiment" and "rash judgment based upon public outcry and unfounded speculation" does not constitute a "valid basis" for rejection of its proposal. According to Aetna, the competent, credible evidence in the record demonstrates there would be far less disruption to NJ Transit's employees upon a switch to Aetna than NJ Transit feared. Aetna further asserts any CBAs requiring NJ Transit to contract with Horizon are "clearly invalid as a matter of law." We disagree.

As NJ Transit recognized in its final decision at issue here, our opinion in NJ Transit, 473 N.J. Super. at 261, is instructive. That case concerned a bid protest about an NJ Transit RFP for local bus service in Hudson County. Id. at 264. Proposals from Academy Express and ONE Bus were received in response to the RFP. Id. at 265. In view of its lower costs, Academy Express's proposal

17

received a higher score from the TEC. Ibid. After NJ Transit issued a notice of intent to award the contract to Academy Express, ONE Bus sought reconsideration, citing a recently settled qui tam action filed by the State against Academy Express arising out of a "'massive,' 'multi-year, multi-million[-]dollar fraud'" allegedly perpetrated by Academy Express against NJ Transit on other bus routes. Id. at 265-66.

Following numerous public comments, and those from state legislators, against the award of the contract to Academy Express, NJ Transit's Board voted unanimously to award the contract to ONE Bus. Id. at 270. Thereafter, NJ Transit denied Academy Express's request for reconsideration and a stay. Id. at 271.

We ultimately denied Academy Express's emergent motion for stay and concluded Academy Express had no "reasonable probability of success on the merits of its appeal." Id. at 273, 278. Citing N.J.S.A. 27:25-11(c), we held the "Board's consideration of 'price and other factors,'" was "broader than the criteria used by the [TEC] in determining the technical and cost scores" of the proposals. Id. at 275-76. We reiterated, "the Board has broad discretionary authority to reject any proposal when it determines 'it is in the public interest to do so,' N.J.S.A. 27:25-11." Id. at 276. We were persuaded "that broad authority"

authorized NJ Transit to "consider the qui tam action and determine it was in the public interest to reject a proposal from a carrier that had only weeks before entered into a multi-million-dollar settlement with the State in a massive fraud case involving the same routes covered by these contracts." Ibid. (citing Keyes Martin, 99 N.J. at 262).

Similarly, we conclude the Board's broad discretionary authority, set forth in N.J.S.A. 27:25-11(c)(2), enabled its consideration of the potential for labor disharmony in its decision to reject Aetna's proposal and award the contract to Horizon. Although we recognize the distinction Aetna draws between the settlement in NJ Transit and labor disharmony in the present matter, our conclusion finds further support in other New Jersey case law.

For example, in Keyes Martin, our Supreme Court addressed similar statutory language allowing the State Treasurer (the Treasurer) or the Director of the Division of Purchase and Property (the Director) to award certain contracts to "th[e] responsible bidder whose bid, conforming to the invitation for bids, w[ould] be most advantageous to the State, price and other factors considered" and reject any or all bids if the Treasurer or Director finds "it is in the public interest so to do." 99 N.J. at 252 (quoting N.J.S.A. 52:34-12); see also On-Line Games, 279 N.J. Super. at 591 (concluding that same language

A-1030-25

"necessarily" requires the Treasurer "to exercise the sound business judgment of an executive based on all available data, expertise and advice which he may be able to garner from all available sources" (quoting In re Honeywell Info. Sys., Inc. Protest of Cont. Award Req. X-32, 145 N.J. Super. 187, 200 (App. Div. 1976))).

Notably, in Keyes Martin, the Court found "[a]ll material factors, including price, must be considered in the ultimate determination of the most advantageous bid." 99 N.J. at 252. But the Court further recognized "[a] requirement of reasonableness is necessarily and sensibly engrafted onto the standard" that permits the Director to reject a bid, but precludes him or her from "reject[ing] low bids based on an irresponsible, unarticulated feeling that the public interest would be best served by doing so." Id. at 261.

With those legal principles in view, we conclude Aetna failed to demonstrate NJ Transit's decision to award the contract to Horizon was a gross abuse of discretion. The Board was entitled to exercise its sound business judgment and decide the threat of labor unrest warranted the rejection of Aetna's proposal. The record clearly supports the Board's determination that there was a significant threat of labor unrest as the representatives of several employee unions publicly and repeatedly expressed their concerns against the potential

A-1030-25

switch to Aetna.  We recognize, as Aetna argues, the TEC found Aetna could provide a better service than Horizon.  But N.J.S.A. 27:25-11(c)(2) empowers the Board – not the TEC – to make that determination.  See also N.J.S.A. 27:25-4(e) (providing "[t]he powers of the corporation shall be vested in the voting members of the board thereof").

We therefore decline to disturb NJ Transit's decision that Aetna failed to demonstrate its decision was arbitrary, capricious, or unreasonable.  We conclude NJ Transit's final agency decision "is supported by sufficient credible evidence on the record as a whole."  R. 2:11-3(e)(1)(D).

### B.

Nor are we persuaded Horizon's proposal was materially deficient.  A contracting agency "may not award a contract to a bidder whose proposal deviates materially from the RFP's requirements."  Barrick, 218 N.J. at 258-59.  The "preliminary inquiry is whether the bid deviates from the RFP."  On-Line Games, 279 N.J. Super. at 594.  "If there is no deviation, the bid must be deemed conforming.  If there is a deviation, a decision must be made as to whether it is material" or whether it "can be waived."  Ibid.

Our Supreme Court has articulated a two-prong test for determining whether an RFP provision is material and non-waivable:

> [F]irst, whether the effect of a waiver would be to deprive the [contracting agency] of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether [the RFP requirement] is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.
>
> [Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 315 (1994) (quoting L. Pucillo & Sons, Inc. v. Twp. of Belleville, 249 N.J. Super. 536, 547 (App. Div. 1991)).]

The Court's analysis applies to "state and local contract cases because the principles which underlie all public bidding schemes are fundamentally the same." On-Line Games, 279 N.J. Super. at 595. If the non-compliance is material, "the inquiry is over because the bid is non-conforming and a non-conforming bid is no bid at all." Ibid. "If, on the other hand, the non-compliance is not material and may be waived, the next step is the specific decision to grant or deny waiver which is then subject to review under the ordinary abuse of discretion standard." Ibid.

Aetna asserts the language stated in Horizon's proposal, that it was "informational in nature and not intended to be a binding offer," is a material defect. But as NJ Transit counters, the RFP specifically informed proposers NJ

A-1030-25

Transit "considers all elements of the Proposal subject to negotiations." Based on our review of the record, we discern no basis to disturb NJ Transit's decision that Horizon's proposal terminology was not a deviation from the RFP, let alone a material deviation.

We further conclude NJ Transit's acceptance of Horizon's proposal to provide only sixty days advance notice of the renewal rates – rather than 150 days as stated in the RFP – was not an abuse of discretion. The 150-day requirement was listed in one section of the RFP as a "minimum requirement" proposers "must meet." However, in Attachment E to the RFP,[3] the requirement was expressed in terms that were more conditional, requesting proposers explain "in the event you cannot comply . . . or if your response is conditioned in any way." The RFP further sought proposals that were "substantially able to meet the request" and "detail" any "deviations."

On appeal, Aetna does not address the conditional language set forth in Attachment E. Nor does Aetna explain how NJ Transit's acceptance of Horizon's deviation would deprive the agency of assurances the contract would "be entered into, performed and guaranteed according to its specified requirements."

---

[3] Attachment E is not included in the appellate record, but is quoted in NJ Transit's final decision.

Meadowbrook Carting, 138 N.J. at 315 (quoting L. Pucillo, 249 N.J. Super. at 547).

Moreover, Horizon's deviation was accounted for in the TEC's scoring of both proposals, resulting in Aetna's receipt of a higher score on that issue. NJ Transit determined Horizon's ninety-day deviation from providing advance notice of its renewal rates was "negligible" and therefore did not constitute a material deviation. Based on our review of the record, we conclude Horizon's deviation did not inappropriately favor that carrier. We therefore discern no error in NJ Transit's waiver of this non-material deviation in Horizon's proposal.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1030-25